## UNITED STATES *v.* SHALLUS (No. 223).[1]

1. WHEN DUTY ATTACHES.
    Duty attaches upon imported merchandise at the time the vessel, with the cargo aboard, arrives within the line of the customs district.

2. WHAT IS A NONIMPORTATION.
    A cargo, or part thereof, so far destroyed as to be of no commercial value at the time the importation is brought within the customs district is not, as to the destroyed portion, deemed an "importation of merchandise" within the tariff laws of the United States, and therefore no duty accrues or can be collected thereon.

3. IMPORTATION DESPITE LOSS IN CARGO.
    The destruction or loss of the whole or any part of a cargo of imported merchandise after this enters the line of the customs district and before it is unloaded from the vessel or entered or surrendered from the custody of the customs is not thereby exempted from the payment of duties, unless by reason of express statute or regulation and then as provided in that statute or regulation.

4. DECAY IN CARGO A QUESTION OF EVIDENCE.
    The Congress has by remedial statute established a rule of evidence in determining the condition of merchandise at the time this crosses the customs line, and the quantity of the merchandise existing at the precise moment of importation, if made an issue, becomes a fact to be proved, as any other fact in issue, by evidence.

5. PRESENT FINDING AS TO LEMONS.
    An examination of all the evidence in this case is persuasive of the correctness of the board's finding, except as to one entry, and on modification the finding is affirmed.

United States Court of Customs Appeals, November 28, 1911.

TRANSFERRED from United States Circuit Court, District of Maryland, Abstract 20361 (T. D. 29449).

[Modified and affirmed.]

*Wm. L. Wemple*, Assistant Attorney General (*Charles E. McNabb* on the brief), for the United States.

*James A. Fechtig, jr.*, and *T. Spence Creney* for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The importations were of lemons at the port of Baltimore. The controversy concerns the proper allowance for nonimportation, occasioned by decay and consequent destruction of a part of each of the cargoes at the time of importation.

---

[1] Reported in T. D. 32074 (21 Treas. Dec., 662).

This question has been the subject of many controversies; and the consideration thereof by customs officials, the Board of General Appraisers, the courts, and the Congress have been voluminous, extending over a long period of time.

Certain legal propositions underlying a solution of the question may be considered fundamental and established beyond controversy. First, and chief of these, is the well-settled legal postulate, that duty attaches upon imported merchandise at the time the vessel crosses the line of and within the customs district. This question has been so often mooted and consistently decided, as above stated, that extensive quotation, or other than citation, in its support would seem superfluous. Meredith *v.* United States (13 Pet., 486); United States *v.* Vowell (5 Cranch, 368); Arnold *v.* United States (9 Cranch, 103); Lawder *v.* Stone (187 U. S., 281); Stone *v.* Shallus (143 Fed. Rep., 486); United States *v.* Habicht (1 Ct. Cust. Appls., 53; T. D. 31031).

It is equally well established, as a fundamental principle of substantive law, that a cargo or part thereof so far destroyed as to become of no commercial value at the time the importation is brought within the customs district is not, as to the destroyed portion, deemed an "importation of merchandise" within the tariff laws of the United States, and therefore no duty accrues thereupon or can be collected therefor. Lawder *v.* Stone (187 U. S., 281); Stone *v.* Shallus (143 Fed. Rep., 486); United States *v.* Habicht (1 Ct. Cust. Appls., 53); Marriott *v.* Brune (9 How., 619).

An equally well-established fundamental principle of substantive law is that destruction or loss of the whole or any part of a cargo of imported merchandise after the same enters the line of the customs district and before the same is unladen from the vessel or entered or surrendered from the customs custody is not thereby, except as per-force of express statute or regulation and as therein provided, exempted from the payment of customs duties. Belcher *v.* Linn (24 How., 508); Meredith *v.* United States (13 Pet., 486); United States *v.* Lyman (26 Fed. Cas., 1024).

In some cases, as where goods are contained in bonded warehouses, such release from duties is expressly forbidden by statute. (Sec. 2983, Rev. Stat.) Such a loss is the proper subject of consideration by the Secretary of the Treasury. Ferry *v.* United States (85 Fed. Rep., 550.)

Assuming these uncontradicted propositions of law to be true, the determination of the amount of rot or decay existing in a cargo of imported lemons or fruit becomes one of evidence. It concerns the establishment of a fact, the exact status of which at the time the vessel crossed the customs line into the jurisdiction of the customs district is, owing to circumstances, impossible of precise and accurate establishment. The Government is authorized and warranted to

collect duties upon actual importations. The importer is called upon to pay duties upon actual importations. It is less difficult for the Government in the first instance to ascertain the exact amount of the importation and of consequent duties at the precise moment that the goods cross the customs line, in exact justice to the importing citizen, in the case of decay or rot, than it is for the latter to establish the precise amount of the importation at that time, as the former has legal custody of the goods. Both are confronted, in the legal aspect of the case, by a condition of facts and rest under circumstances. against which each is relieved perforce of the legal maxim "*Lex non cogit ad impossibilia*" (the law does not seek to compel a man to do that which he can not possibly perform). It is equally within the spirit of this maxim that the law does not require a man in establishing his rights to establish that which is legally impossible for him under the circumstances to do.

While it is true under the ordinary hard and fast principle of substantive law that duties accrue upon imported merchandise at the exact moment they cross the line within the customs district, it is equally true that the whole framework of customs administrative law and regulations are constructed upon the principle that, while duties actually accrue at the time stated, the ascertainment of the amount of duties which have thus and then accrued, and the amount of merchandise which has been imported, its condition, and in every respect its dutiable status, are ascertained as of the time they cross said line by examinations and inspections of their condition at the subsequent time of weighing, gauging, appraising, etc. It would be a physical impossibility to otherwise ascertain their dutiable status.

In recognition of this truth the Congress by statute prescribed certain rules of statutory evidence to be ascertained at the time of examination or other inspection of the goods, and has enacted that the results then ascertained and certified shall become legal evidence of their existence at the time the goods were brought within the customs district. Section 2921 of the Revised Statutes provides, with reference to packages:

If, on the opening of any package, a deficiency of an article shall be found, on examination by the appraisers, the same shall be certified to the collector on the invoice, and an allowance for the same be made in estimating the duties.

This statute, however, is remedial and not substantive. It establishes a rule of evidence denominating what shall constitute legally sufficient proof of the condition of the merchandise at the time of crossing the customs line and is not an amendment of or exception to the substantive law fixing the time when duties accrue.

While it has been held that this certificate by the appraiser is binding upon the collector, United States *v.* Park (77 Fed. Rep., 608), it is not upon the importer, and the quantity of the merchandise or extent of decay existing at the precise moment of importation, when made an

issue, becomes a fact to be proven as any other fact in issue by evidence. Merwin *v.* Magone (70 Fed. Rep., 776).

The burden of proof is upon the importer, protestant in such issues— Denunzio Fruit Co. *v.* United States (164 Fed. Rep., 909), Merwin *v.* Magone (70 Fed. Rep., 776)—as in others, to establish the allegations of his protest. Arthur *v.* Morgan (112 U. S., 495), Herman *v.* Robertson (152 U. S., 521), Presson *v.* Russell (152 U. S., 577).

We think the better reasoning is that he is not estopped from disputing a certificate by the appraiser that the goods were in sound condition or invoice quantities. Note the well-considered opinion and cases cited by Somerville, G. A., in G. A. 5891 (T. D. 25965).

The proof of necessity being related to a time subsequent to actual importation, the trial officer must call to his aid, in the ascertainment of its probably different condition at the previous period, that judicial notice afforded by the "actual course of nature." (1 Greenleaf's Evidence, sec. 3a.)

Remoteness, therefore, ordinarily would seem to go to the weight rather than the materiality of the testimony. The condition of the merchandise, such as fruit, and amount thereof which has withstood the ravages of decay, must of necessity depend upon many and variable conditions and circumstances. Its relative condition at the time of importation measured from any given time thereafter naturally differs in different kinds and classes or grades of the same kind of fruit, its condition when picked, length of voyage, season, and temperature during voyage, its manner of packing and storage, promptness in entry, unloading, examination, and numerous other conditions. These conditions and the witnesses before them all become factors upon and from which the trial court must base its conclusions.

These importations consisted of three cargoes of lemons. The record does not make clear, except indirectly, the interest and relationship of the witnesses.

The *Monviso*, containing 6,056 boxes, arrived at the port of Baltimore July 3, 1908. Entry was made and duty permit issued July 7, 1908, and the ship was discharged July 8, 1908. July 4 and 5 were legal holidays and entry could not on those days be made. The record shows no unusual delay in voyage. The board found and allowed 30 per cent of decay.

The *Citta di Palermo*, containing 13,000 boxes, arrived May 20, 1908. Entry was made May 21 and duty-paid permits issued May 21 or 22, 1908. The goods were unloaded by May 25 and 26, 1908. There was unusual delay in this voyage, owing to the vessel putting in en route to coal. The board found and allowed 30 per cent of certain portions, 15.5 per cent in others, and 8.5 per cent decay in other portions of this cargo.

The *Sicilia*, containing 8,124 boxes, arrived March 16, 1908. Duty-paid permit was issued March 19, 1908. The cargo was unladen by March 20, 1908.

We have examined the evidence in this case, including all reports of the customs officers, sale catalogues, and notations of decay thereupon by the witnesses, with great care.

Save in the case of the *Monviso*, we find nothing in the record warranting this court, in the light of its previous decisions, in disturbing the findings of the board. As to the *Monviso*, however, there is no evidence in the record supporting a further allowance than 15 per cent. The board allowance of 30 per cent is accordingly modified. As thus modified, the decision of the board is *affirmed*.

*Modified.*