W. X. HUBER CO. *v.* UNITED STATES [1]

---

[1] C. D. 67.

United States Customs Court, Third Division

(Decided December 13, 1938)

*Philip Stein* (*Max Greenblatt* of counsel) for the plaintiff.
*Charles D. Lawrence,* Acting Assistant Attorney General (*Daniel I. Auster* and *William J. Vitale,* special attorneys), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

CLINE, Judge: In these suits against the United States the plaintiff claimed at the trial that an allowance should be made for merchandise which was found to have been spoiled when examined by the appraiser in the shipments covered by protests 833961–G and 834189–G and that an allowance should be made for shortage of 20 cases of water chestnuts covered by protest 834118–G.

The claim specified in protest 833961–G is "We claim under paragraph #774 @ 50% on actual weight of good merchandise" and the claim in protests 834118–G and 834189–G is "We claim under paragraph #774 @ 50% on the actual weight of good chestnuts received at this port. 60% spoiled as per Appraiser's report."

Prior to trial, protests 834118–G and 834189–G were amended by adding the claim that allowance should be made for 60 per centum of the chestnuts which were decayed, damaged, destroyed, and abandoned to the United States, as provided in section 506 (1) of the Tariff Act of 1930 and that refund of the duties paid on 60 per centum of the chestnuts is alternatively claimed under sections 492, 506, and 563 of the Tariff Act of 1930.

Protest 833961–G contains additional claims that beans and bean sauce assessed at 3 cents per pound under paragraph 765 are dutiable at 35 per centum ad valorem under paragraph 775, but, as no testimony was introduced respecting such merchandise, there is nothing in the record tending to overcome the presumption of correctness attaching to the collector's classification thereof.

The only witness called at the trial was the United States customs examiner who examined the merchandise in the shipments. He testified that when he made his examination he found that 60 per centum of ten cases of water chestnuts in item 12 on page 1 of the invoice covered by protest 833961–G were spoiled and that all of the water chestnuts in two items of 10 cases each on the same invoice, item 13 on page 2 and item 14 on page 3, were spoiled. He testified further that the 20 cases of water chestnuts in item 1 on the first page of the invoice covered by protest 834189–G were 60 per centum spoiled. In testifying as to the condition of the vegetables which he said were

"spoiled," he stated that "At the time we examined it, it was just a spoiled, rotten mess" and "Unfit for anything." The invoices contain notations in red ink indicating that the merchandise was spoiled to the extent shown by the testimony.

No proof was offered showing that the worthless merchandise was condemned by the Board of Health or that it was abandoned to the Government under the provisions of section 506. In fact, the collector of customs reports that the customs regulations prescribed under the provisions of section 506 were not complied with. On this state of the record, the provisions of section 506 (1) of the Tariff Act of 1930 are not applicable and the protests are overruled as to the claim for relief thereunder.

In the case of *H. Schnell & Co.* v. *United States*, T. D. 47073, it was held that "The language used in section 506 does not indicate any intention on the part of Congress that the remedy therein prescribed shall be exclusive of any other remedy provided by law." Therefore, the relief described in *United States* v. *Shallus*, 2 Ct. Cust. Appls. 332, T. D. 32074, as indicated by the following excerpt from that decision, is still permitted:

It is equally well established, as a fundamental principle of substantive law, that a cargo or part thereof so far destroyed as to become of no commercial value at the time the importation is brought within the customs district is not, as to the destroyed portion, deemed an "importation of merchandise" within the tariff laws of the United States, and therefore no duty accrues thereupon or can be collected therefor. *Lawder* v. *Stone* (187 U. S. 281); *Stone* v. *Shallus* (143 Fed. Rep. 486); *United States* v. *Habicht* (1 Ct. Cust. Appls. 53); *Marriott* v. *Brune* (9 How. 619).

The principles announced in the decision above cited are embodied in article 818 of the Customs Regulations of 1931, but the regulations place the burden on the importers to segregate the useless merchandise from the balance of the shipment, which is not shown to have been done in the instant case. The regulation in force at the time of entry reads as follows:

Art. 818. *Articles damaged and worthless at the time of examination.*—When merchandise, which shall have been segregated from the balance of the shipment under customs supervision at the expense of the importer, is found by the appraising officer to be entirely without commercial value by reason of damage, and is so reported to the collector in the appraisement return, an allowance in duties on such merchandise on the ground of nonimportation should be made in the liquidation of the entry.

Counsel for defendant calls attention in his brief to a statement on the summary sheet attached to the invoice in protest 833961–G indicating that the merchandise was released on May 26, 1934, although no similar statement appears on the summary sheet attached to the invoice in protest 834189–G. Counsel argues that the state-

ment showing the date the merchandise was released proves that the importer received all the merchandise and that the record is barren of any evidence which would tend to prove that the goods did not enter the commerce of the United States. The case of *Boston Brokerage Co.* v. *United States*, 22 C. C. P. A. 461, T. D. 47454, is cited by the defendant in support of the contention that the duty was properly assessed. In that case the court held that certain dried figs, which had been condemned by the Board of Health but which had been disposed of by the importer and had entered into the commerce of the country, were properly assessed with duty. The court said:

* * * it would be inequitable and presumably not within the intention of Congress to refrain from assessing duty upon goods which should have been destroyed or exported, but which in fact had entered into the commerce of the United States.

The importer did not appear at the trial and the record contains no evidence showing the disposal of the spoiled water chestnuts. Counsel for the plaintiff explained that the importer was in bankruptcy and not available but such fact does not excuse the plaintiff from proving the necessary facts to sustain his claim.

The question arises as to whether or not the proof offered at the trial of this case is sufficient to show that the water chestnuts found by the examiner to be worthless had no commercial value at the time they were landed from the importing vessel, under the principle announced in the case of *United States* v. *Shallus, supra*. The entry covered by protest 833961–G was filed on May 14, 1934, and a sheet entitled "Summary of Entered Value, Examination, and Appraisement," attached to the invoice, shows, under the heading "Examiner and Date of examination," that the merchandise was examined by the customs officer on May 25, 1934. The entry covered by protest 834189–G was filed on June 13, 1934, and the notations on the summary sheet show that the merchandise was examined on June 19, 1934. While the examiner testified as to the amount of worthless water chestnuts which he found in the shipments, he did not state when he examined the goods, and the only evidence of the date of examination before us is contained in the reports made on the summary sheets, which show that the vegetables were examined eleven days after entry in one case and six days after entry in the other. In our opinion this evidence does not meet the burden cast upon the plaintiff to prove the condition of the merchandise at the time it crossed the customs line.

As to protest 834118–G, plaintiff contends that there was a shortage of water chestnuts in cases 11/30. The appraiser's report in red ink on the invoice in that case reads "Mdse not received at the appraiser's store." The examiner testified that case No. 11 was ordered

to the appraiser's store but he had a notation that it was said to be short landed. He testified further as follows:

Q. In other words, the merchandise did not arrive?—A. That is right.

Q. That was noted by you on the invoice?—A. We had that notation on the invoice, and we have crossed that out and put down, "merchandise not received at appraiser's stores." We would not know whether it was short-landed; we have no means of knowing that so we changed the notation on the invoice.

Counsel for defendant argues in his brief that protest 834118–G does not specifically claim that there was a shortage. The claim in the protest is that duty should be assessed "on the actual weight of the good chestnuts received at this port." We deem it unnecessary to pass on the sufficiency of the protest to invoke a claim for shortage inasmuch as there is no competent evidence in the record showing that there was a shortage.

The protests are all overruled and judgment will be entered in favor of the defendant.