(C. D. 370)

W. X. Huber Co. *v.* United States

United States Customs Court, Third Division

(Decided August 16, 1940)

*Philip Stein* (*Max Greenblatt* of counsel) for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General, (*Daniel I. Auster, Richard F. Weeks*, and *William J. Vitale*, special attorneys), for the defendant.

Before Cline, Evans, and Keefe, Judges; Evans, J., not participating

Cline, Judge: In these suits against the United States the plaintiff seeks to recover the duty assessed by the collector of customs at the port of Los Angeles on certain water chestnuts which the appraiser reported were spoiled at the time of his official examination, Protest 833961–G contains additional claims relating to beans and bean sauce, but the claims as to such merchandise were abandoned at the trial and are hereby overruled.

The specific claim in protest 833961–G is that the duty on the water chestnuts should be assessed at 50 per centum ad valorem under paragraph .774 of the Tariff Act of 1930 "on actual weight of good merchandise." The original claim in protest 834189–G is substantially the same, but the following amendment was filed with the court, before trial:

Now comes philip stein, Attorney for the above named plaintiff, and in accordance with Section 518, Tariff Act of 1930, moves this Honorable Court for an order directing that the protest above referred to be amended as follows:

60% of said chestnuts were decayed, damaged, destroyed and abandoned to the United States, as provided in Section 506 (1) of the Tariff Act of 1930.

And claim for allowance, or refund of all duties paid on said 60% of chestnuts is separately, alternatively and jointly made under the provisions of Sections 492, 506, and 563 of the Tariff Act of 1930. The Collector assessed duty on too great a quantity. Duty should not have been assessed upon more than 40% of the merchandise.

The cases are now before the court on rehearing. Three cases were consolidated for hearing at the original trial and a decision thereon, unfavorable to the plaintiff's contention, was rendered on December 13, 1938. *W. X. Huber Co.* v. *United States*, 1 Cust. Ct. 289, C. D. 67. A timely application for rehearing was granted in all of the cases, but, at the rehearing, testimony was introduced in but two of the three cases, namely 833961–G and 834189–G. Protest 834118–G which was included in the original decision is not now before us.

The testimony with respect to protests 833961–G and 834189–G is summarized in the court's decision as follows:

The only witness called at the trial was the United States customs examiner who examined the merchandise in the shipments. He testified that when he made his examination he found that 60 per centum of ten cases of water chestnuts in item 12 on page 1 of the invoice covered by protest 833961–G were spoiled and that all of the water chestnuts in two items of 10 cases each on the same invoice, item 13 on page 2 and item 14 on page 3, were spoiled. He testified further that the 20 cases of water chesnuts in item 1 on the first page of the invoice covered by protest 834189–G were 60 per centum spoiled. In testifying as to the condition of the vegetables which he said were "spoiled," he stated that "At the time we examined it, it was just a spoiled, rotten mess" and "Unfit for anything." The invoices contain notations in red ink, indicating that the merchandise was spoiled to the extent shown by the testimony.

In deciding the case against the plaintiff's contention, the court made the following statements in its decision:

No proof was offered showing that the worthless merchandise was condemned by the Board of Health or that it was abandoned to the Government under the provisions of section 506. In fact, the collector of customs reports that the customs regulations prescribed under the provisions of section 506 were not complied with. On this state of the record, the provisions of section 506 (1) of the Tariff Act of 1930 are not applicable and the protests are overruled as to the claim for relief thereunder.

In the case of *H. Schnell & Co.* v. *United States*, T. D. 47073, it was held that "The language used in section 506 does not indicate any intention on the part of Congress that the remedy therein prescribed shall be exclusive of any other remedy provided by law." Therefore, the relief described in *United States* v. *Shallus*, 2 Ct. Cust. Appls. 332, T. D. 32074, as indicated by the following excerpt from that decision, is still permitted:

It is equally well established, as a fundamental principle of substantive law, that a cargo or part thereof so far destroyed as to become of no commercial value at the time the importation is brought within the customs district is not, as to the destroyed portion, deemed an "importation of merchandise" within the tariff laws of the United States, and therefore no duty accrues thereupon or can be collected therefor. *Lawder* v. *Stone* (187 U. S. 281); *Stone* v. *Shallus* (143 Fed. Rep. 486); *United States* v. *Habicht* (1 Ct. Cust. Appls. 53); *Marriott* v. *Brune* (9 How. 619).

The principles announced in the decision above cited are embodied in article 818 of the Customs Regulations of 1931, but the regulations place the burden on the importers to segregate the useless merchandise from the balance of the shipment, which is not shown to have been done in the instant case.  *  *  *.

*       *       *       *       *       *       *

Counsel for defendant calls attention in his brief to a statement on the summary sheet attached to the invoice in protest 833961–G indicating that the merchandise was released on May 26, 1934, although no similar statement appears on the summary sheet attached to the invoice in protest 834189–G. Counsel argues that the statement showing the date the merchandies was released proves that the importer received all the merchandise and that the record is barren of any evidence which would tend to prove that the goods did not enter the commerce of the United States. The case of *Boston Brokerage Co.* v. *United States,* 22 C. C. P. A. 461, T. D. 47454, is cited by the defendant in support of the contention that the duty was properly assessed. In that case the court held that certain dried figs, which had been condemned by the board of health but which had been disposed of by the importer and had entered into the commerce of the country, were properly assessed with duty. The court said:

*  *  *  it would be inequitable and presumably not within the intention of Congress to refrain from assessing duty upon goods which should have been destroyed or exported, but which in fact had entered into the commerce of the United States.

The importer did not appear at the trial and the record contains no evidence showing the disposal of the spoiled water chestnuts. Counsel for the plaintiff explained that the importer was in bankruptcy and not available but such fact does not excuse the plaintiff from proving the necessary facts to sustain his claim.

The question arises as to whether or not the proof offered at the trial of this case is sufficient to show that the water chestnuts found by the examiner to be worthless had no commercial value at the time they were landed from the importing vessel, under the principle announced in the case of *United States* v. *Shallus, supra.* The entry covered by protest 833961–G was filed on May 14, 1934, and a sheet entitled "Summary of Entered Value, Examination, and Appraisement," attached to the invoice, shows, under the heading "Examiner and Date of examination," that the merchandise was examined by the customs officer on May 25, 1934. The entry covered by protest 834189–G was filed on June 13, 1934, and the notations on the summary sheet show that the merchandise was examined on June 19, 1934. While the examiner testified as to the amount of worthless water chestnuts which he found in the shipments, he did not state when he examined the goods, and the only evidence of the date of examination before us is contained in the reports made on the summary sheets, which show that the vegetables were examined eleven days after entry in one case and six days after entry in the other. In our opinion this evidence does not meet the burden cast upon the plaintiff to prove the condition of the merchandise at the time it crossed the customs line.

In his application for rehearing the plaintiff urged that "there was no necessity for any segregation (under article 818 of the Customs Regulations quoted in the decision) because the appraising officer, without any obvious difficulty, had already found the various quantities, claimed as nonimportations, to be without commercial value, by reason of damage which he observed on examination." He stated also—

It is to further establish that that portion of the merchandise claimed to be short, and/or a nonimportation, and/or worthless, was never put into the commerce of the country that we seek this motion for rehearing.

At the trial on rehearing Mr. William X. Huber, a customs broker who made the entries and filed the protests in his own name, was called as a witness. He testified that he personally checked the water chestnuts covered by the shipments and he conferred with the customs officials and the importer regarding the same at the time of importation; that he became familiar with the portions of the merchandise, both good and bad, at that time. As to the merchandise covered by protest 833961–G he testified that, as water chestnuts are fresh vegetables, he made it a practice of going to the dock and checking the cases that come in; that in this case he checked the merchandise at the appraiser's stores with the examiner; that part of the shipment was rotten and decomposed; that the decomposed merchandise was thrown away; that the examiner also noted the same spoilage on the invoice; that 60 per centum of the merchandise invoiced as lot 12 (10 cases) was spoiled; that lot 13 (10 cases) and lot 14 (10 cases) were all spoiled; that the merchandise had been in continuous customs custody up to the time the spoilage was ascertained. The witness testified further that he examined the merchandise covered by protes 834189–G with the customs examiner; that lot 1 (20 cases) was 60 per centum spoiled and lot 2, which consisted of 5 cases, was short and never came in; that the spoiled chestnuts were generally thrown away but he added "I don't know definitely."

The invoice contains a notation "Said to be short" in red ink op posite item 2 but the notation has been crossed out by red lines an the words "Mdse not received at appraiser's stores" inserted. Also the word "short" is written in lead pencil next to item 2.

The record on rehearing clears up the question as to the disposal of the spoiled merchandise. The witness testified that the portions covered by protest 833961–G were thrown away and those covered by protest 834189–G generally were thrown away, but as to that lot he said he did not know definitely. The report of the appraiser in answer to protest 834189–G states that "The percentage of spoiled mdse. was worthless and of no commercial value" but this report was not introduced in evidence, and, as it is dated more than 90 days after the protest was filed, it is not a part of the record herein.

The only question involved is whether the additional testimony introduced on rehearing cures the defects in the record noted by the court in its original decision. The plaintiff's witness testified that he checked the condition of the water chestnuts at the time of importation and that, with the exception of the 5 cases covered by item or lot 2 on the invoice covered by protest 834189–G, the spoiled water chestnuts remained in continuous customs custody up to the time they were examined by the appraiser.

It is undisputed that the 5 cases of water chestnuts in item 2 on the invoice covered by protest 834189–G were not landed in the United States. As they were not received within the jurisdiction of the United States, they are not subject to duty and the court is of opinion that the duty assessed thereon should be refunded.

The following excerpt from the opinion in *United States* v. *Shallus*, 2 Ct. Cust. Appls. 332, T. D. 32074, is particularly applicable with respect to the water chestnuts which the appraiser reported on the invoice were worthless at the time of his examination:

> While it is true under the ordinary hard and fast principle of substantive law that duties accrue upon imported merchandise at the exact moment they cross the line within the custom district, it is equally true that the whole framework of customs administrative law and regulations are constructed upon the principle that, while duties actually accrue at the time stated, the ascertainment of the amount of duties which have thus and then accrued, and the amount of merchandise which has been imported, its condition, and in every respect its dutiable status, are ascertained as of the time they cross said line by examinations and inspections of their condition at the subsequent time of weighing, gauging, appraising, etc. It would be a physical impossibility to otherwise ascertain their dutiable status.

The case from which the above excerpt is quoted has been cited with approval by the appellate court in a number of decisions involving reports of the appraiser relating to deficiencies found in importations. *Madeira Embroidery Co.* v. *United States*, 9 Ct. Cust. Appls. 140, 143, T. D. 37990; *Hamrah Bros.* v. *United States*, 11 Ct. Cust. Appls. 147, 150, T. D. 38945; *United States* v. *Lippmann, Spier & Hahn*, 11 Ct. Cust. Appls. 336, 340, T. D. 39145; *Meadows, Wye & Co.* v. *United States*, 12 Ct. Cust. Appls. 396, 402, T. D. 40583.

The appraiser reported on the invoice that certain portions of the water chestnuts were spoiled and the customs examiner testified in court that the spoiled portions were worthless and unfit for anything. The importer of record also examined the merchandise and verified the examiner's finding and he testified that the worthless merchandise was thrown away. Manifestly the worthless vegetables did not enter the commerce of the United States. As the condition and dutiable status of this merchandise was ascertained by the appraiser at the time of examination while the goods were still in customs custody, under the rule announced in *United States* v. *Shallus, supra*, the condition of the merchandise as reported by the appraiser must be considered the same as when it crossed the customs border.

We find from the evidence that 60 per centum of the water chestnuts in the 10 cases covered by item 12 and all of the merchandise in the 10 cases in item 13 and the 10 cases in item 14, covered by protest 833961–G, and 60 percent of the water chestnuts in the 20 cases in item 1 on the invoice covered by protest 834189–G were worthless and of no commercial value at the time of importation and that the

5 cases in item 2 covered by the invoice in protest 834189–G were short and not landed. We hold that the merchandise above described was a nonimportation and that no duty is assessable thereon. To that extent the protests are sustained and judgment will be entered in favor of the plaintiff.