(C. D. 909)

SOMERSET IMPORTERS, LTD. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided January 13, 1945)

Barnes, Richardson & Colburn; Strauss & Hedges (George R. Tuttle and Joseph Schwartz of counsel) for the plaintiff.
Paul P. Rao, Assistant Attorney General (Frank X. O'Donnell, Jr., Joseph A. Howard, Jr., and William J. Vitale, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: This action is brought by reason of the refusal of the collector of customs at San Francisco to grant an allowance in duties and internal revenue taxes upon certain whisky, invoiced as contained in bottles found to be broken at the time of importation, or at the time of delivery of the merchandise to the importer.

At the trial counsel for the plaintiff admitted that the breakage in question occurred during transshipment of the cases from New York to San Francisco. The discharging inspector and the clerk in charge of the warehouse division at the port of San Francisco testified for the plaintiff. The discharging inspector at the port of Los Angeles and two inspectors at New York, one in charge of the unlading of the importing vessel and the other supervising the lading of the transshipping vessel, testified on behalf of the Government. The evidence disclosed the following facts:

The merchandise was imported from Scotland via the steamship Shickshinny, the ship unlading at the port of New York. The shipment consisted of Scotch whisky in 5,000 cases, 2,500 thereof being destined for the port of Los Angeles, 2,250 for the port of San Francisco, 150 for Seattle, and 100 for Portland. The entire shipment of 5,000 cases after unlading was laden under an immediate transportation entry upon the steamship Muri for transshipment to the West Coast and unladen at Los Angeles where 2,500 cases were placed in storage warehouse and 2,250 reladen on the same vessel for transshipment to San Francisco. The remainder was shipped to Portland and Seattle via the Coastwise Line. This controversy, however, only involves the 2,250 cases landed at San Francisco.

The discharging inspector at New York reported only two cases stained. These were opened and one bottle was found broken in one case and one bottle missing in the other. At Los Angeles, when the 5,000 cases were discharged from the Muri, the discharging inspector made no notation of having discovered any stained cases. Upon arrival of the 2,250 cases at San Francisco, 227 thereof were reported

to be stained. The discharging inspector, however, did not open these cases to ascertain the breakage, merely weighing the same and sending his report along with the immediate transportation entry papers to the warehouse. There was no indication of a regular inspection having been made of the goods in the warehouse. However, upon the granting of an application to repack under the provisions of section 562, Tariff Act of 1930, the storekeeper, in compliance with the order, reported that one case was received at the warehouse entirely empty; one case contained 6 bottles only; 87 cases each contained 11 bottles intact and 1 bottle broken; 28 cases each contained 10 bottles intact and 2 bottles broken; 6 cases each contained 9 bottles intact and 3 bottles broken; 2 cases each contained 8 bottles intact and 4 bottles broken; and 1 case contained 7 bottles, 5 bottles being missing. The affidavit of breakage was filed by the importer within the prescribed time from the date of the storekeeper's report. All of the reports made by the various customs officials, copies of immediate transportation entry, and other papers pertaining to this entry were admitted in evidence.

The provisions of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, so far as applicable to the question here involved, read as follows:

PAR. 813. There shall be no constructive or other allowance for breakage * * * on * * * distilled spirits, except that *when it shall appear to the collector of customs from the gauger's return, verified by an affidavit by the importer to be filed within fifteen days after the delivery of the merchandise, that a* cask or *package has been broken or otherwise injured in transit from a foreign port* and as a result thereof a part of its contents, amounting to 10 per centum or more of the total value of the contents of the said cask or package in its condition as exported, has been lost, *allowance therefor may be made in the liquidation of the duties.* [Italics not quoted.]

PAR. 815. The Secretary of the Treasury is hereby authorized and directed to make all rules and regulations necessary for the enforcement of the provisions of this schedule.

SEC. 484. ENTRY OF MERCHANDISE.

(a) REQUIREMENT AND TIME.—Except as provided in sections * * * 552, * * * the consignee of imported merchandise shall make entry therefor * * * under such regulations as the Secretary of the Treasury may prescribe. *Such entry shall be made at the customhouse within forty-eight hours, * * * after the entry of the importing vessel * * * or after the arrival at the port of destination in the case of merchandise transported in bond, * * *.* [Italics not quoted.]

* * * * * * *

SEC. 552. ENTRY FOR IMMEDIATE TRANSPORTATION.

*Any merchandise, * * * arriving at a port of entry in the United States may be entered, * * * for transportation in bond without appraisement to any other port of entry designated by the consignee, or his agent, * * * there to be entered in accordance with the provisions of this Act.* [Italics not quoted.]

SEC. 562. MANIPULATION IN WAREHOUSE.

Unless by special authority of the Secretary of the Treasury no merchandise shall be withdrawn from bonded warehouse in less quantity than an entire bale,

cask, box, or other package; * * *. All merchandise so withdrawn shall be withdrawn in the original packages in which imported unless, upon the application of the importer, it appears to the collector that it is necessary to the safety or preservation of the merchandise to repack or transfer the same: *Provided,* That upon permission therefor being granted by the Secretary of the Treasury, and under customs supervision, at the expense of the proprietor, *merchandise may be* cleaned, sorted, *repacked,* or otherwise changed in condition, but not manufactured, in bonded warehouses established for that purpose *and be withdrawn* * * * *for consumption, upon payment of the duties accruing thereon, in its condition and quantity, and at its weight at the time of withdrawal from warehouse,* with such additions to or deductions from the final appraised value as may be necessary by reason of change in condition.

Under the Tariff Act of 1930 section 315 provided as follows:

SEC. 315. EFFECTIVE DATE OF RATES OF DUTY.

On and after the day when this Act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to the duties imposed by this Act and to no other duty upon the entry or the withdrawal thereof: *Provided,* That *when duties are based upon the weight of merchandise deposited in any public or private bonded warehouse, said duties shall,* except as provided in section 562 of this Act (relating to manipulating warehouses), *be levied and collected upon the weight of such merchandise at the time of its entry.* [Italics not quoted.]

The Customs Administrative Act of 1938, however, struck out the foregoing after "Provided" and inserted in its stead, the following:

*Insofar as* duties are based upon the *quantity of any* merchandise, *such* duties shall, except as provided in *paragraph 813 and* section 562 of this Act (relating *respectively* to *certain beverages and* to manipulating warehouses), be levied and collected upon the *quantity* of such merchandise at the time of its *importation.* * * *. [Italicized portions represent new language.]

SEC. 499. EXAMINATION OF MERCHANDISE.

Imported merchandise, required by law or regulations made in pursuance thereof to be inspected, examined, or appraised, shall not be delivered from customs custody, except under such bond or other security as may be prescribed by the Secretary of the Treasury to assure compliance with all applicable laws, regulations, and instructions which the Secretary of the Treasury or the Customs Service is authorized to enforce, until it has been inspected, examined, or appraised and is reported by the appraiser to have been truly and correctly invoiced and found to comply with the requirements of the laws of the United States. The collector shall designate the packages or quantities covered by any invoice or entry which are to be opened and examined for the purpose of appraisement or otherwise and shall order such packages or quantities to be sent to the public stores or other places for such purpose. Not less than one package of every invoice and not less than one package of every ten packages of merchandise, shall be so designated unless the Secretary of the Treasury, from the character and description of the merchandise, is of the opinion that the examination of a less proportion of packages will amply protect the revenue and by special regulation or instruction, the application of which may be restricted to one or more individual ports or to one or more importations or one or more classes of merchandise, permit

a less number of packages to be examined. All such special regulations or instructions shall be published in the weekly Treasury Decisions within fifteen days after issuance and before the liquidation of any entries affected thereby. The collector or the appraiser may require such additional packages or quantities as either of them may deem necessary. If any package is found by the appraiser to contain any article not specified in the invoice and he reports to the collector that in his opinion such article was omitted from the invoice with fraudulent intent on the part of the seller, shipper, owner, or agent, the contents of the entire package in which such article is found shall be liable to seizure, but if the appraiser reports that no such fraudulent intent is apparent then the value of said article shall be added to the entry and the duties thereon paid accordingly. *If a deficiency is found in quantity, weight, or measure in the examination of any package, report thereof shall be made to the collector, who shall make allowance therefor in the liquidation of duties.*

No appraisement made after the effective date of the Customs Administrative Act of 1938 shall be held invalid on the ground that the required number of packages or the required quantity of the merchandise was not designated for examination or, if designated, was not actually examined, unless the party claiming such invalidity shall establish that merchandise in the packages or quantities not designated for examination, or not actually examined, was different from that actually examined and that the difference was such as to establish the incorrectness of the appraiser's return of value; and then only as to the merchandise for which the value returned by the appraiser is shown to be incorrect. [Italics not quoted.]

The Customs Regulations of 1937 under which the merchandise here was entered provides, so far as applicable, as follows:

Article 815. Definitions—Outages.—*(a) "Delivery" shall be construed to be effected at the time when merchandise is actually delivered by the carrier or on its order either directly to the importer or to the storekeeper in charge of a bonded warehouse. Where gauging is delayed until after the merchandise has been deposited in a bonded warehouse, date of delivery shall be construed to be the date of the completion of the gauging. Allowance shall be made only for such losses as occurred prior to the gauging of the merchandise.*

*(b) When merchandise is forwarded under an immediate transportation entry delivery shall be construed to be effected at the port of destination under the above conditions.*

*(c) The use of the term "broken or otherwise injured" precludes an allowance for loss resulting from ordinary leakage. \* \* \*.*

     \*        \*        \*        \*        \*        \*        \*

[Italics not quoted.]

Art. 882. (*j*) An allowance in duty on merchandise reported short at destination, including merchandise found by the appraising officer to be damaged and worthless, \* \* \* will be made in the liquidation of the entry, regardless of the amount of duty involved. \* \* \*. The above procedure is not applicable to withdrawals from warehouse for transportation. (See par. (*l*).)

(*k*) Liquidation of entries covering merchandise concerning which there is report of shortage should be made without awaiting instructions from the Bureau, and allowance made for the missing merchandise, except that no allowance should be made for shortages in liquors due to leakage or breakage otherwise than is provided for in articles 814 and 815, or 800 to 803.

Art. 887 (*j*) As to immediate transportation entries without appraisement covering alcoholic beverages, care should be exercised to see that the legal restrictions as set forth in article 1110 are not contravened.

Art. 891. Entry at port of destination.—(a) Merchandise received under immediate transportation without appraisement entry may be entered * * * on any of the other forms of entry, and will be subject to all the conditions pertaining to merchandise entered at a port of first arrival, provided, not more than 1 year has elapsed from date of original importation. If more than 1 year has elapsed only entry for consumption may be accepted. Such entry must show the name of the port of first arrival, the transporting carrier and the number of the immediate transportation entry.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(d) All importations forwarded under immediate transportation without appraisement entries must be held by the bonded carrier at the port of destination until released by the collector of customs.

Art. 892. Unclaimed and short-landed goods. * * *. When notation on the manifest or a report from the collector at the port of first arrival show certain merchandise to have been short-landed, such merchandise should not be included in the entry.

Art. 285. Date of importation. * * *. The date of importation of merchandise forwarded under an immediate transportation entry is the date of arrival of the merchandise at the first port.

The plaintiff contends that the issue here is on all fours with that in the case of *Marco Importing Co.* v. *United States*, 7 Cust. Ct. 206, C. D. 569, and also *Doane* v. *United States*,[b] Abstract 46019; and that under the provisions of paragraph 813 the importer is entitled to an allowance in duties for breakage shown by the storekeeper's report, except as to the breakage of one bottle each in 87 cases; and alternatively it is claimed that, under the provisions of section 562, duty should be assessed only upon the quantity withdrawn from warehouse.

The Government, in opposition to contentions of plaintiff, makes many and various claims, attacking this court's decision in the *Marco* case, and insisting that this court correctly interpreted the law in its decision in *Gallagher & Burton, Inc.* v. *United States*, Abstract 41761. The Government further contends that there is nothing in the provisions of paragraph 813, as amended, which can be construed as indicating that liquor is not to be deemed imported until it arrives at the port of destination; and that unless an intention is expressly stated or clearly implied that paragraph 813, *supra*, modifies section 552, *supra*, and the substantive rules of law enunciated thereunder, this court should not hold that an importation of liquor is not made until the merchandise arrives at the port of destination.

In *United States* v. *Shallus*, 2 Ct. Cust. Appls. 332, T. D. 32074, our appellate court has very succinctly stated the rule governing the assessment of duty upon merchandise in its imported quantity. The court pointed out that although fundamentally duty attaches upon imported merchandise at the time the vessel crosses the line of and within the customs district, if a cargo or part thereof has been so far destroyed as to become of no commercial value at the time the importation is brought within the customs district, it is not deemed to be an importation of merchandise as to the destroyed portion and

consequently no duty accrues thereon. The court draws attention to the principle, however, that if the destruction or loss of merchandise occurs after entering the customs district, and before the same is unladen from the vessel, or before it is entered, or before it is surrendered from customs custody, such merchandise becomes dutiable unless specially exempted by statute.

The court stressed the fact, however, that the exact status of merchandise at the time the vessel crossed the customs line is impossible of precise and accurate establishment; that such condition had been recognized by the Congress and amply provided for in the framework of customs administrative law. The court stated as follows:

* * * . The Government is authorized and warranted to collect duties upon actual importations. The importer is called upon to pay duties upon actual importations. It is less difficult for the Government in the first instance to ascertain the exact amount of the importation and of consequent duties at the precise moment that the goods cross the customs line, in exact justice to the importing citizen, in the case of decay or rot, than it is for the latter to establish the precise amount of the importation at that time, as the former has legal custody of the goods. Both are confronted, in the legal aspect of the case, by a condition of facts and rest under circumstances against which each is relieved perforce of the legal maxim *"Lex non cogit ad impossibilia"* (the law does not seek to compel a man to do that which he can not possibly perform). It is equally within the spirit of this maxim that the law does not require a man in establishing his rights to establish that which is legally impossible for him under the circumstances to do.

*While* it is true under the ordinary hard and fast principle of substantive law that *duties accrue upon imported merchandise at the exact moment they cross the line within the customs district,* it is equally true that *the whole framework of customs administrative law and regulations are constructed upon the principle that,* while duties actually accrue at the time stated, *the ascertainment of the amount of duties which have thus and then accrued, and the amount of merchandise which has been imported, its condition, and in every respect its dutiable status, are ascertained as of the time they cross said line by examinations and inspections of their condition at the subsequent time of weighing, gauging, appraising, etc. It would be a physical impossibility to otherwise ascertain their dutiable status.*

In recognition of this truth the Congress by statute prescribed certain rules of statutory evidence to be ascertained at the time of examination or other inspection of the goods, and has enacted that the results then ascertained and certified shall become legal evidence of their existence at the time the goods were brought within the customs district. * * *. [Italics not quoted.]

While the principle announced by our appellate court affirms that duty attaches to goods which have entered a customs district even though the same may have become destroyed, the rate and the amount of duty and the quantity of the goods are to be determined upon examination by the customs officials after entry and such finding relates back to the time the goods crossed the customs line.

At the time the *Shallus* decision was rendered, warehouse goods were not included in the court's view because section 29 of the Tariff Act of 1909 in force at that time was the same as section 315 of the

Tariff Act of 1930 prior to its amendment by the Customs Administrative Act of 1938. The law then provided that as to goods deposited in any public or private bonded warehouse, the basis of duties, when such duties are governed by the weight of imported merchandise, is the weight thereof at the time of its entry. Thus goods deposited in any public or private bonded warehouse were excepted from the general rule that goods are dutiable upon the basis of the quantity imported. Inasmuch, however, as goods entered for warehouse have now been made dutiable on the basis of their quantity at the time of importation, it would seem that the dutiable quantity would now be determined as outlined by the court in the *Shallus* case.

True, that decision would not necessarily apply to the case before us even though it is a warehouse entry because that decision related solely to goods entered at the first port of entry for consumption, and merchandise entered for immediate transportation to its port of destination would not have been included in the statements there made by the court. However, the Administrative provisions of the law, in our opinion, indicate that after goods, under immediate transportation entry, reach the port of destination, they shall be treated in the same manner as though brought into the original port of entry. In such circumstances it would seem that what the court stated in the *Shallus* case would equally apply to goods entered under immediate transportation. If that be true, merchandise generally entering an external port for immediate transportation to its port of destination, even though to be there entered for warehousing, would be dutiable upon the basis of the quantity imported into the port of destination, as an immediate transportation entry has been held not to be considered the entry of the merchandise. See *in re Munson* v. *United States*, T. D. 12106 (G. A. 968); *Dow* v. *United States*, Abstract 42693 (old series).

The foregoing discussion as to the application of the *Shallus* case to merchandise which has been entered at its first port of entry for immediate transportation to its port of destination to be there entered for warehouse is, so far as this case is concerned, purely academic and is here presented, by reason of the Government's insistence that paragraph 813 is not an exception to the general rule, so as to establish that, even though it were not an exception, the holding of the court would be in harmony with its decision in the *Marco* case.

However, the provisions of section 315, as amended, *supra*, in respect to the dutiable quantities of imported merchandise, apply to all merchandise, whether entered for warehouse or for consumption, but there is an exception which directly affects the question here before us, to wit, "*except as provided in 813 and section 562 of this Act.*" What effect, if any, was intended by the change in language of section 315 by the amendment contained in the Customs Administrative Act

of 1938 is not at issue here. Congress, however, has definitely expressed its intention to except alcoholic liquors from the general provisions relating to the quantities upon which duties shall be assessed. Consequently we must look to the paragraph itself to determine that.

Paragraph 813 provides that no allowance shall be made for breakage except in specific circumstances, to wit, when it shall appear to the collector from the gauger's return, verified by an affidavit by the importer to be filed within 15 days after the delivery of the merchandise that a package has been broken or otherwise injured in transit from a foreign port. The importer in such affidavit is not required to disclose the quantity broken or injured before importation, as determined at the time of landing, or the quantity of merchandise imported at any specified place. It requires the importer to certify to the number of packages broken or otherwise injured in transit from a foreign port which amounts to 10 per centum or more of the total value of the contents of such package in its condition as exported. This language, in our opinion, is perfectly clear. The exported quantity provides the yardstick. The period during which breakage may occur for which allowance may be granted is while the liquors are "in transit from a foreign port." In the *Marco* case, arising after the Customs Administrative Act became effective, we were of the opinion that the words "in transit" should be given their ordinary meaning, to wit, the state of being conveyed, and it was there held that goods are in transit from the exporting country until conveyed to their destination. The court further stated as follows:

* * *. In such transit from the foreign country Congress has provided the mode of the determination of breakage and the proof to be supplied upon behalf of the importer: First, the collector shall have before him the return of the gauger; and second, an affidavit of the importer to be filed after delivery to him of the goods. In making such provision Congress was well aware of the fact that imported goods are gauged at the port at which the goods are destined to be entered and that the importer is unable to gain control over the merchandise until after such entry at the port of destination. ☛

Our appellate court in the *Shallus* case, in our opinion, cogently expresses the situation here before us insofar as it states that " * * * the law does not require a man in establishing his rights to establish that which is legally impossible for him under the circumstances to do." As shown by this court in the *Marco* case, the customs regulations accord with our finding in this case, except article 285, which clearly has no application to the dutiable quantity of alcoholic liquors, especially in view of section 315, as amended. Note particularly articles 815, 882, 887, 891, and 892 of the customs regulations, *supra*. These regulations, which have been effective for many years, when read in connection with the provisions of paragraph 813, and sections 552, 484, 499, and 315, as amended, *supra*, leave no doubt in

our opinion that it was the purpose of the Congress, and so interpreted by the Secretary of the Treasury in regulations which have not been materially changed over a long period of time, that allowance should be made for breakage on distilled spirits upon arrival thereof at the port of destination.

The *Gallagher* case, so strongly relied upon by the Government, arose before the passage of the Customs Administrative Act of 1938. The court there held that "delivery," as appearing in paragraph 813, Tariff Act of 1930, when the merchandise is destined for warehouse, begins to run from the time the merchandise reaches the warehouse, or if part thereof is sent to the appraiser's stores for examination, from the time of the appraiser's report thereon. The court, however, was not consistent in its ruling in that case, as will be seen by a review of the facts. The importation involved 23 cases of rum, packed three bottles to the case, landed at New York and transshipped to Philadelphia, and there entered for warehouse. The discharging inspector at New York reported one bottle broken in case No. 9. Upon arrival at Philadelphia case No. 23 was sent to the appraiser's stores for examination. The appraiser reported one bottle in that case was broken. The storekeeper in the warehouse in making his report indicated that one bottle was broken in case No. 7. The importer's affidavit was filed within the prescribed time from the breakage reported by the appraiser and also the storekeeper. The collector disallowed the breakage in cases 7 and 9, considering the affidavit untimely. He made an allowance in duties as to the breakage in case 23, reported by the appraiser as having been broken at the time of his examination of the case at Philadelphia. This allowance was made by the collector because of the mandatory provisions of section 499, *supra*. The court stated:

The discharging inspector reported only one bottle broken in case 9 at the time of unlading at New York. Apparently that is the only bottle broken in transit from a foreign port and under the provisions of paragraph 813 no allowance is granted for breakage while in transit after arrival in the United States.

The court apparently lost sight of the fact that an allowance had been made by the collector for the breakage reported by the appraiser even though such breakage had occurred while in transit after arrival in the United States, and also that section 315, *supra*, specifically provided that "when duties are based upon the weight of merchandise deposited in any public or private bonded warehouse, said duties shall * * * be levied and collected upon the weight of such merchandise at the time of its entry." And it was not there disputed that the only entry made was at Philadelphia. That case, in respect to the denial of allowance, has no application to the situation before us, first, because here, the provisions of section 315 are not applicable, and second,

because the court's decision was contrary to the specific terms of the statute itself.

For the reasons stated we are of opinion that the importer is entitled to an allowance in duties because of the breakage reported by the gauger as appearing in the affidavit of the importer, insofar as it pertains to 28 cases each containing 2 broken bottles, 6 cases each containing 3 broken bottles, and 2 cases each containing 4 broken bottles. The contention of the importer that duty should be assessed only upon the quantity of liquor withdrawn from warehouse by reason of the repacking of the merchandise under the provisions of section 562 is denied under authority of *United States* v. *Siegfried Lowenthal Co.*, 31 C. C. P. A. 19, C. A. D. 244.

Judgment will be entered accordingly.