(C. D. 1323)

WASHINGTON STATE LIQUOR CONTROL BOARD *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 24, 1951)

*Lawrence, Tuttle & Harper* (*Frank L. Lawrence* and *George R. Tuttle* of counsel) for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Joseph E. Weil* and *Chauncey E. Wilowski*, special attorneys), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges; COLE, J., concurring

OLIVER, Chief Judge: The merchandise in this suit consists of certain glass containers, some broken and empty, others filled with

wine, which were imported at the port of El Paso, Tex., and thence transported under bond to Seattle where final entry was made. Upon arrival at Seattle, the inspector's report of discharge at destination discloses that 420 containers were broken, and 196 were "short, contents missing." Duty was assessed on the full containers at the rate of 20 per centum ad valorem under paragraph 218 (f), Tariff Act of 1930, by virtue of paragraph 810 of the same act, as "all articles of every description not specially provided for, composed wholly or in chief value of glass, * * * whether filled or unfilled, or whether their contents be dutiable or free." Duty was assessed on the broken and missing containers at the rate of 60 per centum ad valorem under paragraph 218 (f), Tariff Act of 1930, as glass articles not specially provided for "that did not contain liquor at the time they came into the United States" (R. 14–15).

The importer claims the glass containers, herein imported filled, are dutiable as "bottles" at only 1/6 cent per pound under the joint application of paragraph 217 and paragraph 810 of the Tariff Act of 1930, as modified by the trade agreement with Mexico, T. D. 50797. It further claims that the broken or empty containers are not dutiable but free of duty as of no commercial value as a nonimportation, or dutiable under paragraph 1555, Tariff Act of 1930, as "waste."

The pertinent provisions of the tariff act, so far as applicable, are:

PAR. 217. Bottles, vials, jars, ampoules, and covered or uncovered demijohns, and carboys, any of the foregoing, wholly or in chief value of glass, filled * * *, not specially provided for, and whether their contents be dutiable or free * * *, shall be subject to duty as follows: If holding more than one pint, 1 cent per pound; * * *: *Provided,* That the terms "bottles," "vials," "jars," "ampoules," "demijohns," and "carboys," as used herein, shall be restricted to such articles when suitable for use and of the character ordinarily employed for the holding or transportation of merchandise, and not as appliances or implements in chemical or other operations, and shall not include bottles for table service and thermostatic bottles.

[By the trade agreement with Mexico, T. D. 50797, the above-quoted rate] of 1 cent per pound was reduced to ½ cent, when such containers were unfilled.

PAR. 218 (f) * * * and all articles of every description not specially provided for, composed wholly or in chief value of glass, blown or partly blown in the mold or otherwise, * * * whether filled or unfilled, or whether their contents be dutiable or free, 60 per centum ad valorem.

PAR. 810. When any article provided for in this schedule is imported in bottles or jugs, duty shall be collected upon the bottles or jugs at one-third the rate provided on the bottles or jugs if imported empty or separately.

No testimony was introduced in this case tending to establish that the containers here in question are bottles rather than jugs and thus dutiable under paragraph 217 of the tariff act. Further, no attempt was made to establish that the commercial meaning of the term "bottles" was different from the common meaning thereof. The only evidence relating to the classification of the containers was plaintiff's illustrative exhibit 1, which counsel for both sides agreed was a sample

of the glass containers in question. It is a hollow vessel of glass, having a flat bottom, with a narrow neck or mouth and a handle. The container is slightly over 12 inches in height, about 20½ inches in circumference, and the neck is about 2½ inches long, attached to which is the circular handle which is about 1½ inches in height, permitting the insertion of a finger for carrying or holding. Its capacity is indicated as 1 gallon.

Counsel for the plaintiff in its brief quotes many definitions of various lexicographers, together with definitions found in the Code of Federal Regulations and the Regulations of the Federal Alcohol Administration as to the meaning of the term "bottle," and contends that these definitions show that the 1-gallon containers here in question are "bottles" according to the common meaning. Particular reference is made to the definition of "bottle" as found in Webster's New International Dictionary, Second Edition, 1948, at page 315, as follows:

**bottle** * * * **1.** A hollow vessel of glass, earthenware, or the like, usually with a comparatively narrow neck or mouth, and without handles. * * * *Bottle* is now so loosely used that its limit of application is not well defined; it is generally distinguished from such vessels as the *jug* and *demijohn*.

It is contended that the expression "usually * * * without handles," contained in the above-quoted definition indicates that bottles sometimes have handles, and that other definitions quoted in the brief fail to suggest that the presence or absence of handles affects the status of a receptacle as a "bottle." We do not, however, construe the above-quoted definition and the others referred to in that light. The definition of a bottle in Webster's dictionary, *supra*, does not state "usually without handles" but is there described as "A hollow vessel of glass, * * * and without handles" and we are of opinion that the word "usually" refers only to "a comparatively narrow neck or mouth."

Webster's New International Dictionary, 1948 edition, page 1344, defines a "jug" as follows:

**jug** * * * **2.** A pitcher or ewer; specif., *U. S.*, a deep, large vessel of earthenware, with a narrow mouth and a handle * * *.

The New Century Dictionary, 1946 edition, p. 884:

**jug** * * * A vessel in various forms for holding liquids, *commonly* having a handle, *often* a spout or lip, and sometimes a lid; a pitcher; also, a deep vessel, usually of earthenware, with a handle and a narrow neck stopped by a cork.

Funk & Wagnalls New Standard Dictionary, 1942 edition, page 315, defines "bottle" as follows:

**bottle** * * * **1.** A vessel for holding, carrying, and pouring liquids, having a neck and a narrow mouth that can be stopped. Specif.: (1) a glass or earthenware vessel, usually with a flat bottom to stand on, a long neck, and a mouth stopped with a cork * * *. (3) Any of the various receptacles serving as a bottle.

The New Century Dictionary, 1946 edition, page 158:

**bottle** * * * A vessel, now commonly of glass, with a neck or mouth that may be closed with a stopper, for holding liquids * * *.

Congress, in paragraph 810 of the Tariff Act of 1930, has provided that either bottles or jugs should be assessed at only one-third the rate when imported as containers of the beverages provided for under schedule 8 of the act. The plaintiff's claim that the glass containers here in question are bottles and as such dutiable under paragraph 217 of the tariff act is overruled. We are of opinion that the glass containers here in question are squarely embraced within the definition of "jug," and therefore the filled containers are properly dutiable at one-third the rate of 60 per centum ad valorem under paragraph 218 (f), *supra*, by virtue of paragraph 810, *supra*.

In the case at bar, the collector applied two rates of duty to the containers, the 20 per centum rate under paragraph 218 (f), by virtue of paragraph 810, to the containers which were filled with wine and unbroken, and the 60 per centum rate under paragraph 218 (f) to the broken and missing containers apparently upon the theory as disclosed in the record that an application for segregation of these containers was not filed by the importer. Section 15.10 of the Customs Regulations of 1943 provides:

**Articles damaged and worthless at the time of importation.**—(*a*) When a shipment of nonperishable merchandise, or any portion thereof which shall have been segregated from the remainder of the shipment under customs supervision at the expense of the importer, is found by the appraising officer to be entirely without commercial value by reason of damage or deterioration and is so reported to the collector by the appraiser, an allowance in duties on such merchandise on the ground of nonimportation shall be made in the liquidation of the entry.

In *Pacific Vegetable Oil Co.* v. *United States*, 64 Treas. Dec. 427, T. D. 46699, this court held with respect to the question of commingled merchandise (section 508, Tariff Act of 1930), that where proof of the respective amounts of such commingled goods is produced, which has been held acceptable to the Government authorities, allowance will be made therefor in the assessment of duties, even though the importer has failed to segregate his importation into its constituent parts for duty purposes within the period and manner fixed by the statute. In the case at bar, the number of containers that were broken or missing was definitely ascertained and certification as to the amount was made by the discharging inspector.

Respecting the plaintiff's claim that no duty should have been assessed on the broken containers for the reason that being broken they were free of duty as a nonimportation, the Government argues in its brief that the doctrine of nonimportation of merchandise cannot be invoked where the merchandise was actually imported but in a broken condition. This court has held that articles broken at the time of importation but capable of being repaired do not constitute a nonimportation. *Ross Beason* v. *United States*, 6 Cust. Ct. 116, C. D.

443. However, this is not the situation in the case before us. In *Schenley Import Corp.* v. *United States*, 6 Cust. Ct. 649, Abstract 45900, 39 bottles which had contained wine were broken and their contents lost. No allowance in duties was made on the broken bottles. The breakage was reported by the discharging inspector and verified by the importer in its affidavit. The court held that the broken containers constituted a nonimportation and directed the collector to reliquidate and refund the duties taken upon the 39 bottles as well as the contents.

In the case of *Marshall Field & Co.* v. *United States*, 69 Treas. Dec. 1229, Abstract 33706, protest was filed against the refusal of the collector to grant an allowance in duties for two perfume bottles reported by the appraiser as broken and having no commercial value at the time of examination. The court there cited *Lawder* v. *Stone*, 187 U. S. 281, 47 L. ed. 178, where the Supreme Court held that merchandise having no commercial value at the time of importation is not subject to duty, and also *United States* v. *Shallus*, 2 Ct. Cust. Appls. 332, T. D. 32074, where it was held that while duties actually accrue at the time of crossing the customs line, the amount of merchandise which has been imported, its condition, and, in every respect, its dutiable status, are ascertained as of the time it crosses said line by examinations and inspections of its condition at the subsequent time of weighing, gauging, appraising, etc. The court held that the two perfume bottles which, at the time of importation, had no commercial value, due to breakage, were not subject to duty.

In the case of *In re Dodge & Olcott Company*, 17 Treas. Dec. 45, T. D. 29494, G. A. 6854, 21 demijohns which were shipped as containers of floral waters were broken prior to importation, and the contents lost by leakage. No duty was assessed upon the floral waters but a duty was assessed upon the demijohns on the theory that while damaged they had some value as they were not "totally annihilated." The court stated:

In the present case the main importation described on the invoice is floral waters, and the demijohns which were broken were simply used as containers and may properly be regarded as mere incidents of the contents. In one sense they were not the merchandise which the protestants designed to import, nor would they have been imported, probably, as separate articles apart from the contents.

The court instructed the collector to reliquidate the entry upon the basis of a nonimportation of both the demijohns and the contents.

Following the cases cited, we hold that the collector erroneously assessed duty upon the missing or broken containers at the rate of 60 per centum ad valorem under paragraph 218 (f), and that said containers constituted a nonimportation at the time the shipment arrived in the United States.

To the extent indicated, the protest is sustained. As to all other claims the protest is overruled. Judgment will be rendered accordingly.

CONCURRING OPINION

COLE, Judge: This case was heard and submitted before a single member of this court on circuit under statutory authorization issued by the chief judge to hear or to hear and determine the case, 28 U. S. C. (1946 ed. Supp. III, § 254).

My views set forth in *Geo. S. Bush & Co., Inc., et al.* v. *United States*, 22 Cust. Ct. 158, C. D. 1175, questioning the jurisdiction of the division to decide a case somewhat similar to these proceedings, continue as the minority expression from the division. Under the practice and procedure of the court and the rules applicable thereto, much litigation before the court is dependent upon my participation in a decision of the same. Adhering, however, to my views expressed in the *Bush* case, *supra*, but for the purpose of expediting the work of the court, I am joining my colleagues in the disposition of this case, and concur in the opinion and judgment attached thereto.