(C. D. 914)

Joseph Dixon Crucible Co. *v.* United States

United States Customs Court, Third Division

(Decided March 26, 1945)

*Puckhafer, Rode & Rode* (*John D. Rode* of counsel) for the plaintiff.
Paul P. Rao, Assistant Attorney General (*William J. Vitale* and *Harold L. Grossman,* special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: This case involves a question of shortage in the invoiced and entered quantities of graphite imported from Ceylon. Decision was rendered.on November 25, 1944, published as Abstract 49825. Within the time prescribed by law, counsel for the Government moved for a rehearing upon the ground that the plaintiff, although duly notified, had failed to file an affidavit of ,shortage, as required in article 812 of the Customs Regulations of 1937, and contending that compliance therewith is a condition precedent to recovery, not only before the collector but also before this court. Government counsel argued that the general authority vested in the Secretary of the Treasury, under section 624 of the Tariff Act of 1930, empowers him to make such rules and regulations as may be necessary to carry out the provisions of section 499; that article 812 was promulgated pursuant to section 624 with a view of protecting the revenues without undue inconvenience to the importer; and that under such regulations the collector is entitled as a matter of law to an affidavit from the importer certifying to the shortage claimed.

Counsel for the Government further contended in support of the motion for rehearing that *Collins* v. *United States*, T. D. 43937, a decision consistently followed for almost 15 years and relied upon in our former decision, was incorrectly decided. The reasons given were that this court misunderstood our appellate court's decision in *Borgfeldt* v. *United States*, 11 Ct. Cust. Appls. 421, T. D. 39433, cited and followed in the *Collins* case. In referring to the *Borgfeldt* case, our appellate court's statement therein reads:

\* \* \* the issue before the board was not whether or not the regulations had been complied with, but whether or not there really was a shortage.

In view of the Government's contention that failure of the importer to file the required affidavit precludes this court from considering the issue, to wit, shortage, and over a period of years, through a misapprehension of the law, it had been assuming jurisdiction and granting relief in such matters, the Government's motion for a rehearing was granted.

The provisions in section 499 of the Tariff Act of 1930, referred to by Government counsel, read as follows:

\* \* \*. If a deficiency is found in quantity, weight, or measure in the examination of any package, report thereof shall be made to the collector, who shall make allowance therefor in the liquidation of duties.

The regulations of the Secretary of the Treasury as appearing in the Customs Regulations of 1937, provide as follows:

Art. 812. Packages.—No allowance will be made in the assessment of duties for lost or missing packages appearing on the entry, unless shown by the report of the discharging officer not to have been landed, and unless the importer shall make affidavit on customs Form 4311 and file same with the collector within 30 days after the date of written notice of shortage (customs Form 4311), which the collector shall mail to the importer immediately upon report of the shortage to him. Such affidavits must be stamped with the date of receipt at the customhouse.

\*        \*        \*        \*        \*        \*        \*

The question before us in this case does not concern a *deficiency* found in quantity, weight, or measure *in the examination of any package.* The provisions of section 499, consequently, are not of interest here. Article 812 is so phrased that it pertains to lost or missing packages only, which neither the appraiser nor the discharging officer would be able to examine in order to determine a deficiency in quantity. Article 812, therefore, is promulgated solely under the general authority granted in section 624 directing the Secretary of the Treasury to make such rules and regulations as may be necessary to carry out the provisions of the act. The Tariff Act of 1930 does not contain any general provision either granting or denying allowances in duties upon the merchandise not imported. There being no statute prohibiting allowances in duties upon merchandise not imported, it would appear doubtful whether or not article 812 was promulgated pursuant to section 624 which authorizes only such rules and regulations as may be necessary to carry out *the provisions of this act.* There being no specific provision to be carried out by the regulation, so far as the merchandise here before us is concerned, there seems to be no authority under which article 812 is to be considered as applicable, unless the principles announced by our Supreme Court in *Marriott* v. *Brune,* 9 How. 619, are to be considered as much a part of our tariff laws as though embodied therein. There it was held that when a portion of a shipment does not arrive it cannot "be taxed on any ground of law or of truth and propriety, and does not therefore require

for its exemption any positive enactment by Congress." In that case the court also held that worthless material when it reached this country was not goods, wares, or merchandise, within the intent of the tariff acts. The court reviewed situations where allowances were specifically made in the law and contrasted them with instances which are "to be regulated by the general provisions for assessing duties, and the general principles applicable to them," and summed up with the following statement:

* * *. Consequently, where a portion of the shipment * * * does not arrive here, and hence does not come under the possession and cognizance of the customhouse officers, it cannot, as heretofore shown, be taxed on any ground of law or of truth and propriety, and does not therefore require for its exemption any positive enactment by Congress.

The court further announced the general rule in this class of cases as follows:

* * * a deduction must be made from the quantity shipped abroad, whenever it does not all reach the United States, or we shall in truth assess here what does not exist here. The collection of revenue on an article not existing, and never coming into the country, would be an anomaly, a mere fiction of law, and is not to be countenanced where not expressed in acts of Congress, nor required to enforce just rights.

Thus it would seem that article 812, as appearing in the Customs Regulations of 1937, was promulgated in view of the principles announced by our Supreme Court rather than under any positive enactment by Congress. Recognizing the rule of legislative sanction of judicial interpretation, section 624 may be regarded as granting powers broad enough to embrace the regulation in question.

In *Lentini* v. *United States*, T. D. 43599, such regulations promulgated under the general power granted in the statute to make rules and regulations for the collection of the revenues, were held regulative or administrative merely and not conditions precedent to the right of exemption from duty. A few decisions according with this view may be here mentioned. In *Catz American Co., Inc.* v. *United States*, Abstract 24001, involving a shortage of cassia, duty was assessed because the importer failed to file the necessary affidavit of nonimportation. The official papers showed that the discharging inspector had reported seven bales not found and the official weight report showed that those seven bales were not delivered to the surveyor for weighing. The court held that allowance should be granted, the uncontradicted evidence having established that the seven bales were not received by the importer and that a settlement for their loss had been obtained from the steamship agents. Also in *McMurchie Printing Co.* v. *United States*, Abstract 30670, shortage was not discovered until the machine there in question had been delivered to the importer and set up. It was then found that about one-third of it was missing Upon presentation of evidence that the missing parts

had been extracted before the machine was shipped from abroad and such parts were later shipped to the importer, the court held that a refund of duties should be made. In *Altman* v. *United States*, 13 Cust. Ct. 56, C. D. 868, this court stated that the province of the regulations was to furnish the collector with evidence aiding him to determine whether or not such claim for allowance in duties because of shortage should be granted. If the collector rejects the affidavit, the importer stands in the same position as though the same were not filed. Upon protest the issue of nonimportation is determined before this court upon the preponderance of the evidence produced.

In view of the foregoing decisions it would appear that our appellate court in the *Borgfeldt* case, *supra*, in making the statements relied upon by this court in the *Collins* case, *supra*, was properly announcing the principles of law long-settled by the courts that the issue in shortage cases is whether or not there was actually a nonimportation, and that the importer is called upon to establish the fact of nonimportation before the court. The courts are not concerned with the importer's compliance with administrative regulations and evidence may be presented before this court to establish shortage even though the importer failed to comply with article 812, *supra*.

As to the merits, it appears that out of a shipment of 250 bags of graphite 17 bags were short-landed, the containers having disintegrated on the voyage, causing the commingling of the graphite contained in several shipments to various importers. The commingled graphite was resacked and apportioned among the importers and 12 bags thereof were allotted the plaintiff. The collector added these 12 bags to the entered quantity as excess merchandise. Duty was then assessed upon the invoiced and entered quantity of 250 bags plus 12 bags in excess, or a total of 262 bags, the collector having refused to make allowance for the 17 missing bags.

For the reasons stated we affirm our former decision and judgment that out of 262 bags of graphite upon which duty was assessed (made up of the entered quantity of 250 bags, plus 12 bags which the importer was forced by the officials to accept as excess merchandise) refund should be made upon 17 bags short-landed.

Judgment will be entered accordingly.