BEFORE THE THIRD DIVISION, NOVEMBER 16, 1945

**No. 50674.**—Protest 87697–K of Washington State Liquor Control Board (Seattle).

KEEFE, Judge: The plaintiff claims here that customs duties and internal revenue taxes were assessed upon whisky which was not landed from the importing vessel. The claim is limited to shortages from five cases numbered as follows:

Case 438, 22 ⅘ths pints short
Case 452, 17 ⅘ths pints short
Case 491, 4 ⅘ths pints short
Case 678, 8 ⅘ths quarts short
Case 720, 9 ⅘ths quarts short

At the trial, the wharfinger for the Arlington Dock Company, the owner of the dock where the ship tied up, testified that he handled the cargo in question, placing the cargo on the dock at the time of discharge from the vessel; that he recoopered cases that were in bad condition; and that he made the deliveries of the cargo to the carriers. In his capacity as wharfinger, the witness testified he made up an over, short, and damage report (known as the O. S. & D. report) from his own records and also from the records of the other dock checkers; that the cargo was watched very closely while being unladen; that when this cargo was delivered to the transfer company the carrier insisted that every case of liquor loaded on its trucks be weighed, and if it failed to come up to the average weight it was opened to ascertain the number of bottles short, pilfered, or broken. The O. S. & D. report was based upon the combined reports of the condition of the cases at the time of unlading and at the time of loading on the trucks for removal from the dock. The shortages in that report, from his personal observation, were made at the time the cargo was discharged from the ship and the cases containing such shortages were put into the locker. The witness read from his notations of partial shortages appearing on a paper entitled "Manifest of Valuable Cargo." These notations of shortages agreed with the claims in the protest as above set out. The witness further testified that at the time he made his notations of shortages Customs Inspector Nicki Moran was on the dock. He could not, however, testify that the Inspector watched him make his notations. The "Manifest of Valuable Cargo" sheet and the record of the cases the transfer company turned back as light weight, as shown on the "Re-coopered package inventory" and two delivery orders, were admitted in evidence as collective exhibit 1.

The customhouse broker testified that he filed an affidavit for shortage of cases 369 and 442 and obtained an allowance in duties therefor; that also an affidavit for breakage was filed as to case 442, having 3 four-fifths pints broken out of the usual 24 four-fifths pints in the case, and was granted an allowance in duties for such breakage; that he did not file an affidavit for shortages in the partially short cases because it had been the practice of the collector's office at the port of Seattle to grant such allowances for shortages when the discharging officer's report showed the same on his entry permit return; that he was on the dock at the time of the discharge of the cargo from the vessel and witnessed the bad order cases being put in the locker; and that later he ascertained the extent of the partial shortages from the Arlington Dock Company's O. S. & D. report,

which was connected with the shipment in question by describing the goods, the label brand of the whisky, and the numbers of the cases. These descriptions, according to the witness, would not be duplicated in any other lot of whisky bearing the same marks. The O. S. & D. report referred to was admitted in evidence, a copy being substituted for the original and marked as exhibit 2. A letter from the plaintiff to the broker enclosing lists of bad order goods on the importing vessel was admitted in evidence as exhibit 3. The list referred to therein, relating to the shipment in question, was admitted in evidence as exhibit 4. The witness further testified that he had conversations with Inspector Moran as to the shortages not reported; that the inspector agreed with him that the shortages existed and left him with the impression that he would recall his report and amend the same to include such partial shortages.

Inspector Moran testified as to the usual practice in ascertaining shortages, so far as the customs inspectors are concerned, as follows: That after the cargo is discharged on the dock, a customs officer, an employee of the dock and an officer from the ship get together and open and examine the bad order cases; that then the three officials agree on the damage, if any, and thereafter the inspector makes his notations of shortage upon his official papers. He further testified that he had no recollection of any conversation with the customhouse broker, nor did he have any personal knowledge of any additional shortages in this shipment over and above those he reported on the entry permit, nor did he have any independent recollection of a conference between the dock and ship officials and himself, although he admitted that such conference had to occur and did take place in this instance.

The plaintiff contends as there is no breakage, leakage, or damage in any of the five cases in question, that paragraph 813, prohibiting any allowance for breakage, leakage, or damage does not apply, and therefore the customs regulations prescribed under authority of paragraph 813 are likewise inapplicable. Plaintiff further contends that general regulations relating to allowances for shortage govern the action of the collector and are binding on that officer, but are not of such character as will preclude evidence of shortage being established before this court, and that the evidence before the court sustains the plaintiff's claim that the shortages in the five cases in question existed at the time of unlading the vessel.

The Government contends that article 813 (c), Customs Regulations of 1937, provides that there shall be no allowance for shortage in an unexamined package unless claim therefor is filed with the collector within the specified time, together with evidence satisfactory to the collector, and because of the failure of the importer to file the required mandatory affidavit, which is a condition precedent to recovery, the importer is precluded from recovery in a suit before this court, citing Schelling v. United States, 14 Ct. Cust. Appls. 159, T. D. 41691.

We are of the opinion that the record before us fully sustains the plaintiff's claim of shortage in the five cases in question, and that the shortage existed at the time of unlading the cases from the importing vessel. In the Schelling case, relied upon by the Government, the shortage was not discovered until the goods had reached the storeroom of the importer, and there was no evidence before the court to establish that the goods were short landed from the vessel. The court noted that the loss might have occurred upon the dock or while in the custody of the truckman. As to the mandatory features of the customs regulation governing shortages, our appellate court stated that the collector had no power, in the absence of compliance with the regulation, to grant the relief. However, the court did not hold that this court was precluded from granting relief upon the presentation of evidence to sustain the importer's contention. In that case it was the absence of evidence establishing shortage rather than the failure to comply with regulations which precluded the court from granting relief.

In *Sears, Roebuck & Co.* v. *United States*, T. D. 43248, this court held that where the issue is shortage of articles in nonexamination cases, and the importer has failed to comply with reasonable customs regulations governing shortage claims to be filed with the collector, he may introduce appropriate evidence before the Customs Court to establish actual nonimportation.

In *Dixon* v. *United States*, 14 Cust. Ct. 71, C. D. 914, the Government's contention that this court is precluded from determining the issue because the importer failed to file the affidavit of short shipment was held untenable. The court stated that the issue before the court in shortage cases is whether or not there is in fact a nonimportation and compliance with the regulations was held immaterial.

Inasmuch as the plaintiff has established that a shortage of liquor existed at the time of unlading from the vessel, in view of the foregoing cases, judgment will be entered in favor of the plaintiff directing the collector to reliquidate the entry and make refund of all duties or internal revenue taxes assessed upon the missing bottles.