(C. D. 1014)

H. SCHNELL & Co. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 26, 1946)

*Barnes, Richardson & Colburn* (*J. Bradley Colburn* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Harold L. Grossman,* special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is a suit against the United States arising at the port of New York by protest against the collector's assessment of duty under paragraph 770 of the Tariff Act of 1930 at 2½ cents per pound on onions which are claimed to have arrived in a decayed condition, unfit for human consumption. The claim for allowance is based upon section 506 (1) of the said tariff act or on the ground that the merchandise constituted a nonimportation.

The record disclosed that 1,000 crates of onions marked "Frutera" and 963 crates marked "H. S." were imported from Chile, arriving in New York on May 10, 1942. Samuel Schnell of the importing firm stated that on the morning of May 12, he went to the pier and inspected the merchandise; that he found some of the onions rotten and began to repack the crates, but not under customs supervision; and that the repacking was finished on May 18 and 425 crates of rotten onions were set aside. The witness stated further that on May 19, he called the customs broker and reported that 425 crates were abandoned on the pier; and that on May 20, the broker wrote a letter to the collector stating that the 425 crates were abandoned under the provisions of section 506 (1), *supra.*

Thereafter on May 19, 20, and 21, according to the records of the Chilean Line, the 425 crates together with 1,538 crates belonging to another importer were sent to the incinerator at the order of Mr. John Balfoire who had repacked the merchandise for both Mr. Schnell and the other importer. A letter of the broker dated November 25, 1942, contains the following statement:

Relative to the above, we would request that you suspend liquidation for a period of 60 days to enable us to secure the proper affidavits and statements regarding the disposition of certain merchandise abandoned to the Government, but disposed of by the Steamship Company prior to examination by the Customs Appraiser.

Mr. Schnell testified that he had had 28 years' experience in importing and selling onions; that he knew some of the onions were rotten the minute he looked at them; that he could smell them 50 or 100 feet away; that they could not have gotten into that condition during the period between the date of arrival (May 10) and the date of his inspection (May 12); and that the damage occurred prior to the arrival of the vessel.

According to the invoices the crates weighed 50 pounds each. Mr. Schnell stated that they contained 64 or 72 onions each, depending upon the size of the onions and that they weighed around 48 pounds,

but that he did not weigh any of them. He was asked whether in repacking, each crate was filled to capacity and stated:

Originally the way they come. The way they come, the way I put them back, same way, same condition.

Mr. Mercer, of the brokerage firm, stated that the certificates of the Government weigher showed that out of one mark (that marked "Frutera"), 150 crates were test weighed and 3 crates were tared, and out of the other mark ("H. S."), 100 crates were test weighed and 3 tared, and that the average weight of the total was 48.4 pounds to a crate or 20,570 pounds for the 425 crates. The weigher's certificate is dated June 23, 1942.

Section 506 (1) of the Tariff Act of 1930 and the regulations issued thereunder provide:

### SEC. 506. ALLOWANCE FOR ABANDONMENT AND DAMAGE.

Allowance shall be made in the estimation and liquidation of duties under regulations prescribed by the Secretary of the Treasury in the following cases:

(1) ABANDONMENT WITHIN THIRTY DAYS.—Where the importer abandons to the United States, within thirty days after entry in the case of merchandise not sent to the appraiser's stores for examination, or within thirty days after the release of the examination packages or quantities of merchandise in the case of merchandise sent to the appraiser's stores for examination, any imported merchandise representing 5 per centum or more of the total value of all the merchandise of the same class or kind entered in the invoice in which the item appears, and delivers, within the applicable thirty-day period, the portion so abandoned to such place as the collector directs unless the collector is satisfied that the merchandise is so far destroyed as to be nondeliverable ***

Art. 807. Abandonment under section 506 (1). [Customs Regulations, 1937.]

\*       \*       \*       \*       \*       \*       \*

(b) The collector shall cause the abandoned merchandise to be examined and identified with that described in the invoice used in making entry. Merchandise abandoned under section 506 (1) must be identified to the satisfaction of the collector; and when repacking is necessary to segregate it from the balance of the shipment, such repacking should be done at the expense of the importer under customs supervision.

It is clear from the evidence that this section and the regulations were not complied with since the merchandise was not delivered to a place directed by the collector nor was it identified to the satisfaction of the collector. Compliance with the regulations is a condition precedent to the granting of relief under that section. *United States* v. *Morris European & American Express Co.*, 3 Ct. Cust. Appls. 146, T. D. 32386; *W. A. White Brokerage Co.* v. *United States*, 65 Treas. Dec. 339, T. D. 46922; *W. X. Huber Co.* v. *United States*, 1 Cust. Ct. 289, C. D. 67.

However, plaintiff makes the claim upon the further ground that the merchandise constituted a nonimportation. Merchandise which has been so far destroyed as to become of no commercial value is not con-

sidered an importation and no duty may be collected thereon. *Lawder* v. *Stone*, 187 U. S. 281; *United States* v. *Shallus*, 2 Ct. Cust. Appls. 332, T. D. 32074. It has been held that the remedy provided for in section 506 (1) and the above-quoted regulations is not the only way in which the plaintiff may obtain an allowance for nonimportation. *H. Schnell & Co.* v. *United States*, 65 Treas. Dec. 868, T. D. 47073; *W. X. Huber Co.* v. *United States, supra*, decided on rehearing in 5 Cust. Ct. 59, C. D. 370. See also *Joseph Dixon Crucible Co.* v. *United States*, 14 Cust. Ct. 71, C. D. 914, where the court held that the issue in shortage cases is whether or not there was actually a nonimportation and that the courts are not concerned with the importer's compliance with administrative regulations. However, in a recent case, *United States* v. *Canada Dry Ginger Ale, Inc.*, 34 C. C. P. A. 12, C. A. D. 337 (Suit 4530), decided May 7, 1946, it was held that since the importer had failed to comply with customs regulations in regard to lost or missing packages, the collector's refusal to grant an allowance was not erroneous and could not be challenged by protest.

Moreover, in order to establish the fact of nonimportation, plaintiff must prove the quantity, percentage, or amount that was destroyed or worthless. *Bush & Co. (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 22, T. D. 39894; *United States* v. *H. W. Robinson & Co.*, 20 C. C. P. A. 222, T. D. 46036; *H. Schnell & Co.* v. *United States, supra.* In the last-cited case, which also involved decayed onions, it was held that since the merchandise was subject to a specific duty based upon net weight, it was incumbent upon plaintiff to establish the actual net weight of the portion claimed to constitute a nonimportation. The court said (p. 872):

The Government weigher's official return of weight of the entire landed quantity shows that in this shipment there were two sizes of crates of two different weights, and that the half cases weighed more than either size crate. The evidence before us shows that these onions were sorted and repacked sometime between December 22, 1931, the date they were weighed by the Government weigher, and December 31, 1931, the date the rots were reladen on the importing vessel.. There is nothing to show how many of each size crate were included in the 199 crates of rots; and even though this had been established it would still be incumbent upon the importers to introduce competent evidence of the actual net weight of the decayed goods contained in the 199 crates and 13 half cases. This cannot be ascertained by reference to the Government weigher's return of landed net weights, since the decayed goods were no longer in their original packages and were not covered by the said report.

In the instant case the crates were all of one size but there is nothing to show the actual weight of the decayed goods. Mr. Schnell did not weigh any of the crates so that his statement that the crates weighed 48 pounds each is insufficient. The invoices state that the crates weighed 50 pounds each. The testimony based on the Government weigher's certificate cannot be accepted as proof since the certificate is dated subsequent to the date of the destruction of the decayed

merchandise, and, therefore, could not have covered it. Moreover, it is not clear from the testimony that the 425 crates were filled to capacity.

For the reasons above stated, the protest is overruled. Judgment will be rendered for the defendant.