No. 51547.—Protest 114979–K of Pacific Customs Brokerage Co. (Detroit).

Lawrence, Judge: The articles in controversy are invoiced as "SSA 108 50 Worm Gear Ball Races." Duty was levied thereon at 8 cents per pound and 35 percent ad valorem under paragraph 321 of the Tariff Act of 1930, that being the reduced rate of duty applicable to "metal ball or roller bearings, and parts thereof, whether finished or unfinished, for whatever use intended," as provided in the trade agreement between the United States and Sweden, effective August 5, 1935, 68 Treas. Dec. 19, T. D. 47785. Plaintiff claims said merchandise to be properly entitled to free entry under the provision in paragraph 1643 of said act for "sand-blast machines * * * all the foregoing whether in whole or in part, including repair parts." The protest also sets forth a claim for shortage, alleging "that the importation contained only 25 sets SSA 108 worm gear ball races and not 50 sets as invoiced by Gray Forgings and Stampings Limited" of Canada.

Little or no dispute has arisen concerning the precise nature and character of the articles in controversy as represented herein by exhibit 1. As explained by the witness Lucchese, that exhibit constitutes but one-half of the ball retainer or raceway, the other half being an exact duplicate thereof. When equipped with the appropriate number and kind of balls designed to fill the groove, the two halves and the balls constitute a complete roller bearing or so-called assembly. The present shipment contains the necessary balls and races required to comprise 25 complete assemblies. However, the protest is limited to the races only.

Apparently the plaintiff has little faith in any claim which would seek to exclude the balls from paragraph 321, *supra*, because in the course of the trial its

witness said of the balls: "There's no question about those," adding "they are properly classified."

As to the intended use to be made of the imported ball races, the uncontradicted evidence discloses that they were purchased solely as repair or replacement parts of machines specially designed and constructed for cleaning the inside of ammunition metal shells by a sand-blasting process, and that they have no other use.

Therefore, it would seem that the single question presented concerning the tariff status of these ball races is necessarily one of relative specificity, namely, which of the two provisions above-quoted more definitely describes the articles for classification purposes. We regard as somewhat significant the fact that no question is raised as to the metal balls accompanying the races, because if they were correctly classified, then why is not the same true of the races or retainers of the balls? However, we regard our decision in *Elder Williams & Clarke* v. *United States*, 65 Treas. Dec. 1333, Abstract 27188, as controlling the classification question here submitted. There, as here, the involved articles consisted of "metal retainers for ball bearings," and they were classified by the collector as parts of roller bearings under said paragraph 321. In claiming the articles to be parts of bicycles and as such *eo nomine* provided for in paragraph 371 of the Tariff Act of 1930, the plaintiff evidently relied upon the doctrine of chief use. In the text of our decision therein on file in this court we said:

Precisely similar merchandise was passed upon in the case of Norma Co. of America v. United States, 6 Ct. Cust. Appls. 13, T. D. 35250, and was therein held to be properly classifiable as unfinished parts of ball bearings and as such *eo nomine* provided for under paragraph 106 of the Tariff Act of 1913. That paragraph did not contain the words "for whatever use intended" found in the present paragraph 321. Therefore, the doctrine of use may not be applied to the latter paragraph to remove therefrom articles specially mentioned therein.

On the established facts as to the precise nature and character of the imported merchandise, we overrule all claims of the plaintiff and affirm the decision of the collector. * * *

Paragraph 1643, *supra*, provides for "sand-blast machines * * * whether in whole or in part, including repair parts." We are not prepared to hold that a provision for such repair parts was intended to invade the *eo nomine* designation in paragraph 321, *supra*, for ball or roller bearings for whatever use intended. It would seem that any degree of greater specificity that may be claimed under paragraph 1643, *supra*, by reason of the rule of chief use, is at once negatived by the expression in paragraph 321, *supra*, "for whatever use intended," and we so hold.

With respect to the question of shortage, it appears from the uncontradicted testimony of plaintiff's witness that there were received only 25 sets or assemblies of ball races instead of 50 sets as invoiced; that the error occurred in billing the goods; and that the Canadian vendor had subsequently admitted the mistake and credited the importer for the 25 sets not shipped. Corroborative affidavits were duly executed by the president of Gray Forgings & Stampings Limited, the Canadian seller, and by the secretary-treasurer of Peerless of America, the purchaser and ultimate consignee, and were received in evidence herein as collective exhibit 3, without objection of Government counsel. Indeed, as pointed out in the brief of said counsel, the record discloses "that although this merchandise was in what is known as an examination package, the customs officers did not count the pieces contained therein at the time of importation." True, the customs liquidator testified that the collector had not made allowance in duties for the shortage claimed because the affidavits required by customs regulations had not been filed in time. But, as aptly pointed out in said brief, in shortage cases it has been consistently held that the issue to be determined by the court therein is not

whether the customs regulations have been complied with, but whether there has been in fact a nonimportation as claimed. The most recent decision applying that rule is in the case of *Joseph Dixon Crucible Co.* v. *United States*, 14 Cust. Ct. 71, C. D. 914. The court there cited and followed the ruling of the Supreme Court of the United States in *Marriott* v. *Brune*, 9 How. (50 U. S. 619), to the effect that when a portion of a shipment does not arrive in this country, it cannot be taxed and does not require for its exemption any positive enactment by the Congress. Note also *Schelling* v. *United States*, 14 Ct. Cust. Appls. 159, T. D. 41691; *Sears, Roebuck & Co.* v. *United States*, 55 Treas. Dec. 406, T. D. 43248, and cases cited therein; *Scintilla Magneto Co.* v. *United States*, 63 Treas. Dec. 1147, T. D. 46493; and *United States* v. *H. W. Robinson & Co.*, 20 C. C. P. A. (Customs) 222, T. D. 46036.

In the light of the facts established by the record and following our ruling in *Elder, Williams & Clarke* v. *United States, supra,* we conclude (1) that the merchandise in controversy was properly classified by the collector of customs as parts of metal ball or roller bearings, and as such dutiable at 8 cents per pound and 35 percent ad valorem under paragraph 321, *supra,* which is the reduced rate provided in the trade agreement between the United States and Sweden, *supra;* and (2) that the claim alleging short shipment of 25 sets or assemblies of roller bearings, has been substantiated, and is, therefore, sustained, and refund should be made accordingly. All other claims in the protest are overruled.

Judgment will be entered accordingly.

### CONCURRING OPINION

TILSON, Judge: I concur in the conclusion reached by my associates, but I am not entirely in agreement with the statement that "* * * the single question presented concerning the tariff status of these ball races is necessarily one of relative specificity * * *." Paragraph 321, under which classification was made, provides for "* * * metal ball or roller bearings, and parts thereof, whether finished or unfinished, for whatever use intended * * *." The following from *Blumenthal* v. *United States*, 14 Ct. Cust. Appls. 17, expresses my views with reference to the present situation:

The goods are either artificial flowers and leaves, or manufactures of artificial flowers and leaves. If they be artificial flowers or leaves, they are provided for *eo nomine* in paragraph 1419. Consequently, if relative specificity could be held to be determinative of the competition between the two paragraphs here involved, there would be no legal alternative left except to subject the merchandise to the duty of 60 per centum ad valorem as prescribed by paragraph 1419. The rule that an *eo nomine* designation must be preferred where goods are within the terms of two or more paragraphs carrying different rates of duty cannot, however, be applied in this case without ignoring the manifest intention of Congress clearly and unmistakably expressed in paragraph 1430. That paragraph provides that trimmings and ornaments *by whatever name known and to whatever use applied whether or not named, described or provided for elsewhere in the act, shall be subjected to a duty of 90 per centum ad valorem.* By that language Congress left no doubt as to its intention, and, consequently, rules of construction or interpretation cannot be invoked to give to the statute a meaning other than that which its terms clearly and plainly import.

While the language under consideration in the *Blumenthal* case was somewhat more all-embrasive than the language here under consideration, yet, in my opinion, the holding of our appellate court is equally applicable in the present case.

Since, according to our conclusion herein, paragraph 321 invades paragraph 1643 and claims for classification merchandise therein *eo nomine* provided for, it should also be noted that paragraph 321 likewise invades paragraph 372 and claims for classification all metal ball or roller bearings, and parts thereof which

may be incorporated as a part of reciprocating steam engines and steam locomotives; sewing machines; steam turbines; cash registers; printing machinery; bookbinding machinery; paper-box machinery; lawnmowers; machine tools; embroidery machines; lace-making machines; machines for making lace curtains, nets and nettings; knitting, braiding, lace braiding, and insulating machines, and all other similar textile machinery; cream separators, and other centrifugal machines; combined adding and typewriting machines; machines for cutting or hobbing gears; and in like manner paragraph 321 invades numerous other paragraphs and claims for classification the metal ball or roller bearings, and parts thereof, which may be incorporated as a part of the article *eo nomine* provided for in such other paragraphs.

With the above observations I concur in the conclusion reached by my associates in this case.