(C. D. 1329)

YORK FEATHER & DOWN CORP. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 22, 1951)

*Sharretts, Hillis & Paley* (*Howard C. Carter* of counsel) for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*Jerome Vale* and *William J. Vitale*, special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

JOHNSON, Judge: The controversy in this action involves the weight of certain white goose feathers imported in 15 bales from Hong Kong. The merchandise was entered as "crude feathers from domesticated birds for bedding purposes" and assessed for duty as such at the rate of 20 per centum ad valorem under paragraph 1518 of the Tariff Act of 1930. The plaintiff claims that an allowance in weight should have been made for dirt and other impurities in excess of the amount usually found in such merchandise. The collector adhered to the original liquidation, in view of the importer's failure to comply with section 507 of the Tariff Act of 1930, and section 15.7 of the Customs Regulations of 1943, as amended.

At the trial the treasurer of the plaintiff corporation testified that, when purchasing white goose feathers from China, there are specifications indicating the quantity of dirt, quills, chicken feathers, and down contained therein. At the time the instant shipment was received, at his place of business, the witness caused it to be weighed. He found that there were 6,582 pounds, net, of feathers, when received at the factory. After the merchandise had been processed for separation and the removal of dust, the weight thereof was found to be 5,791 pounds, and, after washing, the weight thereof was 5,423 pounds. In

the processes to which the feathers were subjected, the witness stated that nothing was removed except dirt and dust.

The dusting and other processes were described by the witness as follows:

The dusting machine is a contraption which is a big steel cylinder which has a screen on the bottom, a large screen, and the feathers are being sucked into it so while they pass over that screen all the heavy dirt is falling out. Then from that it goes into a big tumbler which is covered by a screen, a steel screen, which has very small holes, and it is tumbled inside of this cylinder, and air suction is sucking the dirt out. After a certain time, when part of the dust is removed, then it is taken out again by air suction, and then it goes to the separating machine, which by air suction separates that raw feathers into its component parts of down, small feathers, larger feathers, and quills, and the separating machine has a screen at the bottom so that part of the remaining dust falls down through that screen. Then those separate parts are being taken to washers, which are big steel cylinders where the feathers are being washed with water and chemicals. From that it goes into a centrifuge, where the water is extracted, and then from that it goes into a steamer, which is again a big steel cylinder. It has a double jacket, and in between the two walls there is live steam containing the moisture which is still in the feathers, and that passes out into the air. From that it goes into another duster or cooler, where if any dust remains, it passes out and the merchandise is cooled. When that is all through the merchandise is ready for sale or for making mixtures, and then it is being sold.

Upon cross-examination, the witness testified that the gross weight of the 15 bales of feathers was 6,777 pounds; that, when ordered, the specifications of the feathers were: Nanking white goose feathers, best quality, 10 percent dirt, 2 or 3 percent quills, and 1 percent chicken feathers; that after the merchandise was dusted, it was discovered that there was more dust than provided for in the specifications

The papers in the case disclose that the weigher returned the gross weight of the feathers as 6,781 pounds; that the tare deducted was 195 pounds; and that the net weight was 6,586 pounds.

Counsel for the importer contends that an allowance should have been made for 1,169 pounds of dirt or dust; that said dirt or dust is not subject to duty at the rate applicable to feathers; that duty is assessable only on the net weight of the feathers, excluding the weight of the impurities, packing, or other substances; that the commodity imported is feathers and consequently the only material subject to duty; and that any extraneous matter found therein is not the imported commodity and is generally not subject to duty, unless specifically provided for in the tariff act in connection with the merchandise upon which it occurs. In that connection, counsel for the plaintiff referred to paragraph 761 providing the rates upon edible nuts, wherein it is specifically provided "That no allowance shall be made for dirt or other impurities in nuts of any kind, * * *." Many cases are cited in brief of plaintiff's counsel where allowances were made for extraneous materials, such as the water imported in cans of pimientos and in cans of peas and beans; the water in which

certain collodion cotton was packed; the water saturating fulminate of mercury to prevent friction in transportation; the powdered naphthalin sprinkled in bales of wool as a disinfectant; the paper and foil wrapped around Roquefort cheese; as well as the fuller's earth and other earthy coverings on importations of cheese.

Counsel for the Government contends that the plaintiff has failed to comply with the law and the mandatory customs regulations relative to tare and draft. It is urged by counsel for the Government that section 507, *infra*, provides an allowance for impurities only when in excess of that usually found in or upon merchandise, and that such allowance is not granted except when the mandatory regulations have been complied with.

Counsel for the importer in a reply brief urges that the change in section 315, as amended, *infra*, directed that duty be levied and collected only upon the actual quantity imported. However, counsel for the Government also in a reply brief points out that in section 315, as amended, Congress merely directed that duty be assessed upon the quantity of merchandise at the time of its importation, rather than upon the quantity of merchandise at the time of its entry, and, therefore, the amendment in question neither altered nor enlarged the express provisions of section 507, directing that "in no case shall there be any allowance for draft or for impurities, other than excessive moisture and impurities not usually found in or upon such or similar merchandise."

The Tariff Act of 1930, respecting the classification of the merchandise, and the quantity thereof subject to the imposition of duty, provides as follows:

PAR. 1518. Feathers and downs, on the skin or otherwise, *crude or not dressed, colored, or otherwise advanced or manufactured in any manner*, not specially provided for, 20 per centum ad valorem; *dressed*, colored, *or otherwise advanced or manufactured in any manner*, including quilts of down and other manufactures of down, 60 per centum ad valorem; * * *. [Italics not quoted.]

SEC. 507. TARE AND DRAFT.

The Secretary of the Treasury is hereby authorized to prescribe and issue regulations for the ascertainment of tare upon imported merchandise, including the establishment of reasonable and just schedule tares therefor, but *in no case shall there be any allowance for draft or for impurities, other than excessive moisture and impurities not usually found in or upon such or similar merchandise.* [Italics not quoted.]

SEC. 315. EFFECTIVE DATE OF RATES OF DUTY.

On and after the day when this Act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to the duties imposed by this Act and to no other duty upon the entry or the

withdrawal thereof: *Provided*, That when duties are based upon the weight of merchandise deposited in any public or private bonded warehouse, said duties shall, except as provided in section 562 of this Act (relating to manipulating warehouses), be levied and collected upon the weight of such merchandise at the time of its entry.

SEC. 315. EFFECTIVE DATE OF RATES OF DUTY [as amended by the Customs Administrative Act of 1938].

On and after the day when this Act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to the duties imposed by this Act and to no other duty upon the entry or the withdrawal thereof. *Insofar as duties are based upon the quantity of any merchandise, such duties shall*, except as provided in paragraph 813 and section 562 of this Act (relating respectively to certain beverages and to manipulating warehouses), *be levied and collected upon the quantity of such merchandise at the time of its importation.* * * * [Italics not quoted.]

The Customs Regulations of 1943, as amended as of January 1946, relative to excessive moisture and other impurities, provide as follows:

15.7 **Excessive moisture and other impurities; application for allowance; procedure.**—(a) Application for an allowance for excessive moisture or other impurities under section 507, Tariff Act of 1930, shall be made on customs Form 4317 and filed with the collector of customs within 10 days after the return of weight has been received by him.

(b) The collector shall cause such investigation to be made as may be necessary to determine whether or not the merchandise contains excessive moisture or other impurities not usually found in or upon such or similar merchandise, together with the amount thereof, and, if necessary, may refer the application to the appraiser for such determination.

(c) If the collector is satisfied from the reports received that the claim is valid, due allowance shall be made in the liquidation of the entry.

Referring first to the claim of the plaintiff that Congress made the change in section 315, by amendment in the Customs Administrative Act of 1938, for the purpose of directing that duty should be levied and collected only upon the actual quantity imported, it will be noted that in the case of *International Trading Co.* v. *United States*, 69 Treas. Dec. 808, T. D. 48303, this court construed section 315, *supra*, as providing that duties, based upon the weight of merchandise, are to be determined as of the time the merchandise entered the warehouse, and not at the time the entry papers were prepared, or at the time the merchandise was withdrawn from warehouse. In the case of *Somerset Importers, Ltd.* v. *United States*, 14 Cust. Ct. 44, C. D. 909, this court also noted the change in section 315, as amended, *supra*, stating in its decision, as follows:

* * * Inasmuch, however, as goods entered for warehouse have now been made dutiable on the basis of their quantity at the time of importation, it would

seem that the dutiable quantity would now be determined as outlined by the court in the *Shallus* case.

In *United States* v. *Shallus,* 2 Ct. Cust. Appls. 332, T. D. 32074, above referred to, the appellate court stated, in effect, that while duties accrue upon imported merchandise at the exact moment the goods cross the customs line, the whole framework of customs administrative law and regulations is constructed upon the principle that the ascertainment of the amount of duties which has thus and then accrued, and the quantities of goods which have been imported, their condition, and in every respect their dutiable status, are ascertained as of the time they cross said line by examinations and inspections of their condition at the subsequent time of weighing, gauging, appraising, etc. Upon appeal (*United States* v. *Somerset Importers, Ltd.,* 33 C. C. P. A. 138, C. A. D. 328), the appellate court also approved the construction of the lower court, as follows:

It will be observed that in the above 1938 amendment Congress, for the first time, uses the words "certain beverages" and requires that duty be levied upon the *quantity* of such merchandise "at the time of importation." Notice also that, as the trial court pointed out, paragraph 813, with which we are here chiefly concerned, *is excepted from the provision* in the same way as is section 562 which provides for taking duty on warehouse manipulated goods on the *quantity* at time of withdrawal.

* * * In other words, the quantity of the liquor under paragraph 813 was not to be taken as of the *time of importation* (at the time of crossing the customs border, according to the Government), but as of the time of entry and to be ascertained before delivery at the port of final destination from the gauger's return. * * * [Italics quoted.]

In view of the foregoing decisions, we are of the opinion that Congress was well aware of the import of section 315, as construed in the *International Trading Co.* case, *supra,* and it was its intention to so change the law that all merchandise, except as noted therein, including warehouse goods, would be dutiable upon the basis of the quantity at the time of importation, as established by subsequent weighing, gauging, and appraising, as outlined in the *Shallus* case, *supra.* There is nothing to indicate that Congress intended to repeal or abrogate the provisions of section 507, as claimed by the plaintiff.

The plaintiff also stresses that dirt or other extraneous matter is not the imported commodity and that it is not generally subject to duty. It is pointed out that paragraph 761 specifically prohibits allowance of dirt or other impurities in nuts of any kind. Therefore, where there is an intention on the part of Congress to assess duty upon impurities, it specifically so states in the tariff act. This court is unable to agree with this contention. In paragraph 763, the seed paragraph, and in paragraph 781, for spices and spice seeds, allowance was prohibited for dirt and other foreign matter, and in paragraph 774, the vegetable paragraph, not only was there a prohibition of

allowance for impurities, but segregation of foreign matter contained in such imports was prohibited. It will be noted that section 507, *supra*, prohibits allowance for impurities *other than excessive moisture* and *impurities not usually found* in or upon such or similar merchandise. There is nothing, therefore, which forbids an allowance for excessive moisture and for impurities not usually found in or upon the particular merchandise imported, except as appears directly in connection with the dutiable provisions for merchandise in paragraphs 761, 763, 774, and 781.

In *Pacific Vegetable Oil Corp.* v. *United States*, 15 Cust. Ct. 161, C. D. 964, a claimed allowance in internal revenue taxes for the weight of impurities in an importation of sesame seed, found to consist of 4.89 per centum of dirt and chaff and 0.07 per centum of foreign seeds, was held to be governed by the proviso in paragraph 763, prohibiting any allowance for "dirt or other impurities in seed of any kind." The appellate court stated:

We are of the opinion that plaintiff's claim that the foreign substance in the sesame seed should not have been assessed with tax as part of the net weight of the product is untenable. No table is made in the protest that the impurities in question are within the purview of section 507, where any allowance for impurities is prohibited except that of excessive moisture and impurities not usually found in or upon such or similar merchandise. * * *

Even though the claims in this case were confined to the return of the tax taken upon impurities uncommonly present in sesame seed, the plaintiff could not prevail because seeds are specifically removed from the exception in section 507 by the proviso in paragraph 763, prohibiting allowance "for dirt or other impurities in seed of any kind." Such a proviso is not confined to the seeds provided for in paragraph 763 but invades every other paragraph of the act so that any allowance for dirt or other impurities in seeds of any kind may not be made, irrespective of whether or not such impurities may be deemed to be excessive. (See *Stone* v. *United States*, 2 Ct. Cust. Appls. 46, T. D. 31593.) In view of section 2493, *supra*, the proviso to paragraph 763, is extended to include imported merchandise subject to an internal revenue tax. Therefore, an allowance for impurities in the seeds in question may not be granted under any provision of the Internal Revenue Act.

The principal contention of plaintiff is that duty is not properly assessable upon dirt imported upon the feathers in question. Section 507 prohibits an allowance for dirt or impurities unless of such character as are not usually found in or upon the goods. The dirt and other impurities in the feathers in question have not been shown to be of such unusual character. In *Rosenbaum Grain Corp.* v. *United States*, 72 Treas. Dec. 428, T. D. 49205, this court stated that—

In order that the plaintiff recover in this suit it is essential that it be shown, * * * second, that the abatement in duties sought is for draft or other impurities not usually found in or upon such or similar merchandise, * * *.

As in that case, so in the case at bar, there was no such showing.

In *American Bitumuls Co.* v. *United States*, 10 Cust. Ct. 106, C. D. 732, the court pointed out that section 507, Tariff Act of 1930, authorizes the Secretary of the Treasury to prescribe and issue regulations for the ascertainment of tare upon imported merchandise but limits any allowance for draft or impurities to such as constitute excessive moisture and impurities not usually found in or upon such or similar merchandise, and that the customs regulations promulgated in conformity therewith require an importer to file an application for an allowance for excessive moisture or other impurities on customs Form 4317 within 10 days after the return of weight has been received by the collector. The court held that the regulations were reasonable and valid and had the same binding effect as the statute itself, and that compliance therewith is a condition precedent to recovery. In that case, there was a bottom sediment and moisture in an importation of crude oil which was admitted by the customs officials to be excessive. However, no application for an allowance was filed within the prescribed time after the return of weight was sent to the collector, and the court held that the collector's action in not making an allowance was in accordance with law.

In the case of *Wood* v. *United States*, 4 Ct. Cust. Appls. 228, T. D. 33439, dirt in raisins, not shown to be in excess of the usual quantity, was not allowable as tare.

In the case of *Shallus* v. *United States*, 1 Ct. Cust. Appls. 316, T. D. 31408, the court held that the ordinary impurities of merchandise do not constitute tare, but the extraordinary impurities, such as are not commonly present in the merchandise, as bought and sold in the trade and commerce, are alone the subject of allowance.

The cases relied upon by the plaintiff, such as *Mattia Locatelli New York Branch* v. *United States*, 69 Treas. Dec. 750, T. D. 48284, and others, where certain extraneous material applied to cheese to exclude the atmosphere and prevent drying out, was held to be a packing material and not a part of cheese, have no application in the present case. The merchandise here is feathers. The feather provision in the tariff act, as to the feathers in question, applies to feathers, "crude or not dressed, colored, or otherwise advanced or manufactured in any manner." As will be noted the paragraph also makes provision for dressed feathers, or for feathers, otherwise advanced in condition, at a much higher rate of duty, in fact, at three times the rate of duty applied to crude feathers. The weight of feathers for which the plaintiff contends is the weight of feathers, advanced in condition, and in such state the higher rate would be applicable. In the case of *Globe Shipping Co., Inc.* v. *United States*, Abstract 4073, the feathers there in question were reported by the appraiser to be cleaned and dressed. The importer contended that they were crude. They consisted of gray goose and duck feathers.

The importer testified that it was possible for such feathers to contain 40 per centum dirt and filth, but the health authorities would not allow shipments to be made in that condition; that, in his opinion, all except about 15 per centum of the dirt had been removed, and the trade practice allowed that quantity of dirt in feathers. The court observed:

* * * It appeared that before such feathers can be ultimately used for pillows they must be put through blowing machines, cleaned and steamed, to remove the dust and dirt and that the feathers in question were sold to a dealer in raw feathers. The dealer who purchased the feathers involved testified that he subjected them to three processes, dusting, cleaning, and dusting again, and that they were weighed when he bought them and again after being processed and that this particular lot contained between 12 and 15 per cent of dirt, body dust, etc., which had to be removed before they could be used for pillows.

It was held that the testimony established that the importation in question consisted of crude feathers within the meaning of the language of paragraph 1419.

Inasmuch as the evidence discloses that the feathers were imported in a crude condition, and that the processes used by the plaintiff to obtain the feathers upon which it is claimed duty should be assessed clearly are for the purpose of producing feathers suitable for their ultimate use in filling of beds, etc., it is evident that the plaintiff is seeking to obtain an assessment at the crude rate of 20 per centum upon the basis of a quantity subject to a 60 per centum rate, that is, the rate for feathers, advanced in condition. The commodity imported is not feathers, as claimed, but crude feathers. The Congress in its wisdom has recognized that feathers in a crude state would naturally contain dust and other extraneous matter and, therefore, provided a rate that was only one-third the rate of feathers free from dust and dirt. Not only has the plaintiff failed to establish that there was excess dirt or other impurities in the feathers in question, but the mandatory regulations of the Secretary of the Treasury were not complied with, and, in view of the fact that the plaintiff seeks to have these feathers assessed for duty at the rate of crude feathers when they are in an advanced condition, all of the claims made herein are held to be without merit.

Judgment will therefore be entered in favor of the Government.